STATE of Missouri, Plaintiff–
Respondent,

v.

Ronald R. HAUSERMAN,
Defendant–Appellant.

No. 24054.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 24, 2002.

Brad D. Eidson, Houston, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., for respondent.

JOHN E. PARRISH, Judge.

Ronald R. Hauserman (defendant) was convicted, following a jury trial, of involun-tary manslaughter. § 565.024.1(1).[1] He was charged as and found to be a persis-tent offender. *See* § 558.016.3. This court affirms.

Defendant was traveling westbound on Highway H in Texas County, a two-lane road, following two other vehicles. As he approached the crest of a hill, defendant proceeded to pass the two vehicles. He could not see what was on the other side of the crest of the hill from the location where he undertook to pass. The center-line on the road was marked with a double yellow, no-passing line.

Defendant collided head-on with another vehicle. The driver of the other vehicle was killed instantly. Defendant had been in the eastbound lane for approximately one-fourth of a mile between the point where he entered the eastbound lane and the point where the collision occurred. His vehicle was in the eastbound lane at the time of the collision.

A rescue worker at the scene stated defendant's eyes "appeared to be all pu-pil." Two highway patrol officers at the scene noticed he was acting strangely and that his eyes were dilated.

Defendant was taken to a hospital where blood and urine samples were taken. He told the nurse who took his blood sample she would probably "find some crank left over from last night." Later at the sher-iff's office, defendant told Highway Patrol-man Kevin Floyd he had used "[c]rank." Officer Floyd was asked if he was familiar with what crank was meant to be among drug users. He answered, "It's metham-phetamine."

Defendant's first two points on appeal are directed to events that occurred at trial during the jury selection process. Point I asserts the trial court erred "in

1. References to statutes are to RSMo 1994 unless stated otherwise.

limiting the peremptory strikes to three for each side"; that Missouri law permits the state and a defendant in a criminal case, punishable by imprisonment in the penitentiary, six peremptory strikes each.

■ At the conclusion of voir dire, the trial judge heard challenges for cause. After he ruled on the challenges, he identified the prospective jurors from whom the 12 jurors and 2 alternate jurors would be chosen. The trial judge told the attorneys they would receive three strikes each from the list of prospective jurors and one additional strike each from four remaining prospective jurors from whom the two alternate jurors would be chosen. Each side made the number of strikes the judge prescribed, thereby selecting a jury of 12 and 2 alternates.

Defendant is correct in his assertion that Missouri statutes allow each side six peremptory challenges in a felony criminal case. The case was tried November 6–7, 2000. Section 494.480.2, RSMo 2000, provides:

> In all criminal cases, the state and the defendant shall be entitled to a peremptory challenge of jurors as follows:
>
> (1) If the offense charged is punishable by death, the state shall have the right to challenge nine and the defendant nine;
>
> (2) In all other cases punishable by imprisonment in the penitentiary, the state shall have the right to challenge six and the defendant six; . . . .

The crime for which defendant was tried, involuntary manslaughter, is a Class C felony. § 565.024.2. Because defendant was a persistent offender, the range of punishment was imprisonment in the penitentiary for a term of not less than two years or more than 20 years. §§ 558.011.2 and 558.016.7(3).

Defendant neither objected at trial to the number of peremptory challenges allowed nor included the limitation as asserted error in his motion for new trial. In *State v. Thomas,* 530 S.W.2d 265 (Mo.App. 1975), the parties were entitled to a panel of 47 prospective jurors from which to make peremptory challenges, but only 34 were provided. The defendant in *Thomas* was entitled to 20 peremptory challenges, but the trial court allowed him only 12. There, as in this case, the defendant did not object at trial to the limit imposed on the number of peremptory challenges he was allowed, nor did he complain in his motion for new trial. His attempt to raise the issue on appeal was unsuccessful. The court held, citing *State v. Nichols,* 165 S.W.2d 674 (Mo.1942), that failure to object to a jury panel that provided the defendant with fewer peremptory challenges than authorized by statute constituted a waiver of the right to a larger panel. 530 S.W.2d at 267. The court granted plain error review. It found no plain error.

As in *Thomas,* defendant's failure to timely object was a waiver of his statutory right to more than three peremptory challenges. This court's further review, as permitted by Rule 30.20, convinces it that no plain error occurred. Point I is denied.

Point II asserts it was error for the trial court to refuse defendant's challenge for cause of prospective juror Karen S. Childress. The basis for defendant's challenge of Ms. Childress was her agreement with an answer another prospective juror, Cindy Lea Stevenson, gave when asked about the effect of the presence of any amount of drug in a person's system. Ms. Stevenson was asked, "Would you feel that if there was any methamphetamine in [defendant's] system, in your opinion, he would be under the influence?" She answered, "Yes."

Defendant's attorney then asked the panel of prospective jurors, "Anyone else feel that way?" Several other prospective jurors responded. During the colloquy that followed, defendant's attorney restated his question. He told the panel, "[M]y question was—really, if you have any drug in your system, whether you, as a juror, believe that person is under the influence of that drug, without hearing anything else."

Panel member Patricia Lou Cox responded, "Yes. I'm a registered nurse and so I believe with my background and knowledge about medications that I would feel that that is the case-that potentially there is the side effects of any drug that you would be taking, whether it be prescription or illegal."

Defendant's attorney asked, "Anyone else feel that way? While we're on the subject, do we have any other registered nurses?" Ms. Childress responded. Defendant's attorney asked her, "Well, do you feel the way your fellow nurse feels?" She answered, "I believe, yes—that every medication has a potential for side effects, but I think that cigarettes may do the same thing, so I'm not sure—you know, how much drug are we talking about—when was it taken? I'm not sure I even know what the side effects of methamphetamines are."

At the close of voir dire, defendant challenged Ms. Childress for cause. Defendant's attorney argued Ms. Childress indicated that because she was an RN, she would think back to her own education and training in listening to the evidence about the effects of methamphetamine; that this might affect her. The attorney for the state contended that all Ms. Childress indicated was that every medication had potential side effects; that she had not said anything that would tend to disqualify her. He argued there was nothing about what she said that suggested she could not be fair. The trial court denied defendant's challenge of Ms. Childress.

Section 494.470.1, RSMo 1994, provides:

No witness or person summoned as a witness in any cause, *no person who has formed or expressed an opinion concerning the matter or any material fact in controversy in any case that may influence the judgment of such person,* and no person who is kin to either party in a civil case or to the injured party, accused, or prosecuting or circuit attorney in a criminal case within the fourth degree of consanguinity or affinity shall be sworn as a juror in the same cause. [Emphasis added.]

Defendant argues that Ms. Childress' answers to questions posed on voir dire reflected an opinion concerning the effect of his having ingested methamphetamine and thereafter operating a motor vehicle; that this was a matter in controversy in this case. He contends the responses of Ms. Childress to the questions asked disclosed that she had preconceived ideas; that she was, therefore, biased and prejudiced. Ms. Childress served as a juror in the case.

The qualifications of a prospective juror are not determined conclusively by a single response "but are made on the basis of the entire examination." *State v. Brown,* 902 S.W.2d 278, 285 (Mo. banc), *cert. denied,* [516] U.S. [1031], 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). Because it is in the best position to evaluate the venireperson's commitment to follow the law, the trial court has broad discretion in determining the qualifications of prospective jurors. Its ruling on a challenge for cause will not be disturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion. *[State v.]*

*McMillin,* 783 S.W.2d [82] at 91 [ (Mo.banc 1990) ].

*State v. Kreutzer,* 928 S.W.2d 854, 866 (Mo. banc 1996), *cert. denied,* 519 U.S. 1083, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997).

■ Taken as a whole, Ms. Childress' responses to questions asked on voir dire could be interpreted as stating that medication, as well as other things a person might ingest, such as cigarette smoke, could produce side effects but that she had no knowledge of side effects from methamphetamine. The trial court could have concluded that because Ms. Childress had no knowledge concerning the effect of methamphetamine, she was unbiased and was qualified to serve as a juror. This court perceives no abuse of discretion by the trial court in denying defendant's challenge of Ms. Childress for cause. Point II is denied.

Point III is directed to the verdict forms the trial court provided for the jury's use and the form in which the guilty verdict was rendered. Defendant withdrew the assertions of error made in Point III at oral argument of the case.

■ Point IV is directed to the trial court's denial of a motion to strike certain words from the information filed in defendant's case and in permitting evidence at trial of methamphetamine in defendant's blood.[2] Point IV further complains that the use of the words "after having ingested methamphetamine" in jury instruction No. 5 was error. That allegation, however, was not preserved for appellate review in that the instruction about which defendant complains was not set out in the text of the

argument portion of defendant's brief. *State v. Clayton,* 995 S.W.2d 468, 483 (Mo. banc), *cert. denied,* 528 U.S. 1027, 120 S.Ct. 543, 145 L.Ed.2d 421 (1999). Rule 84.04(e) states: "If a point relates to the giving, refusal or modification of an instruction, such instruction shall be set forth in full in the argument portion of the brief." The rule is made applicable in criminal appeals pursuant to Rule 30.06(d).

■ Defendant was charged with having "recklessly caused the death of Danny J. Aldridge, by colliding with a vehicle in which Danny J. Aldridge was an occupant, while operating a motor vehicle in the County of Texas, State of Missouri, on the wrong side of the road after having ingested methamphetamine." Defendant filed a motion to strike in which he sought to strike the words, "after having ingested methamphetamine." This court did not discern a ruling by the trial court on defendant's motion. The record does disclose denial of a motion in limine directed to such evidence. The trial court ruling on the motion in limine will be considered as having extended to the motion to strike as well.

Martin Lindenbush, a chemist employed by the Missouri State Highway Patrol Crime Lab, testified at trial. He tested the blood sample drawn from defendant at the hospital after the accident and the urine sample defendant provided. He testified that the blood and urine samples contained methamphetamine. Mr. Lindenbush told the jury that the urine sample also contained the drug nortriptyline, an antidepressant. Mr. Lindenbush deter-

---

**2.** Although not asserted as error in Point IV, the argument portion of defendant's brief complains that the reference to methamphetamine use was improper because it was evidence of an uncharged crime. Questions not raised in a point relied on are not preserved for appellate review. *State v. Xia,* 60 S.W.3d 28, 30 (Mo.App.2001). Nevertheless, this court notes that "[e]vidence of uncharged crimes is admissible to present a complete and coherent picture of what transpired." *State v. Barrett,* 41 S.W.3d 561, 564 (Mo.App. 2001).

mined that the blood had a concentration of methamphetamine of 263 nanograms per milliliter.

Mr. Lindenbush was asked to describe "as a general proposition what affect [sic] methamphetamine has on the body and on individuals who ingest methamphetamine." He answered, "Well, methamphetamine is a stimulant—a central nervous system stimulant, which means that it stimulates all sorts of things in the body. It increases heart rate, can make one nervous, can decrease one's appetite, can make a person more alert or prevent them from sleeping—that sort of thing."

The state also called Christopher Long as a witness. Dr. Long testified that he directed the Forensic Toxicology Laboratory for St. Louis University School of Medicine, Department of Pathology. He stated that he had a bachelor's degree in chemistry and masters degrees in medical biology and pharmacology/toxicology. His doctorate degree is in toxicology. Dr. Long testified about the effects methamphetamine would have on individuals consuming it. He stated that when present in the blood, methamphetamine affects a person's decision making. He was asked if he could explain what effects methamphetamine would have on decision making and judgment. He explained:

> Well, there's a couple of things. One is inattention. The number one cause of any accident, whether it's drug involved or not, is inattention. You don't pay attention—something happens. The drugs facilitate inattention. Because you are altering your brain chemistry, you're altering your ability to pay attention.... [Y]our ability to comprehend the situation you're in, to respond appropriately, is all impaired, and also you become sort of like—nobody can hurt me—you know, I got my drug, I'm immune—and it's almost a sociopathic-type

behavior that I can—you know, I'm Superman. That'd be the best way to put it.

Dr. Long stated the opinion, based on the blood test and the urinalysis results admitted in evidence, that defendant was under the influence of methamphetamine at the time of the crash. He was asked if he had an opinion as to whether the intoxication from the methamphetamine would have affected defendant's ability to make proper judgments in deciding how to drive, when to drive, and under what circumstances to pass. Dr. Long answered:

> Yes sir—and it would have impaired his ability to do that—to comprehend the situation that he was in, and it would have impaired him up and down the whole line from even the minute he would have seen—or the second he would have seen the other truck, to the decision making going up a hill and someone could be on the other side. The entire decision-making process is impaired. It's analogous to—you don't have a couple of drinks and balance your checkbook. You just can't work that way.

He characterized a methamphetamine dose taken 20 hours earlier that would have produced the test results as "[a] massive amount of methamphetamine."

■ The testimony of Mr. Lindenbush and Dr. Long demonstrated that one who had ingested the amount of methamphetamine shown to be in defendant's system would be impaired. Dr. Long testified that the intoxication from the methamphetamine would have impaired defendant's ability to make proper judgments in deciding how to drive, when to drive, and under what circumstances to pass. That evidence, standing alone, would not have established the offense of manslaughter. *State v. Bextermueller*, 643 S.W.2d 292, 295 (Mo.App.1982), holds that ingestion of

alcoholic beverages may be considered with other evidence on the issue of culpable negligence in a manslaughter case. *See also Stojkovic v. Weller*, 802 S.W.2d 152, 154 (Mo. banc 1991). This court perceives no difference in showing intoxication due to voluntary ingestion of alcohol or voluntary ingestion of methamphetamine. This court holds the evidence of defendant's impaired condition by reason of methamphetamine use was admissible on the issue of defendant's culpability.

Involuntary manslaughter occurs when one recklessly causes the death of another person. § 565.024.1(1). It also occurs when, while in an intoxicated condition, a person operates a motor vehicle and, in so operating the vehicle, acts with criminal negligence to cause the death of a person. § 565.024.1(2). The manner in which defendant undertook to pass two vehicles at a location where the pass could not be safely completed was evidence of negligence and of recklessness. The trial court did not err in denying defendant's motion to strike the reference to defendant's "having ingested methamphetamine" from the information or in permitting evidence on that subject. Defendant's use of methamphetamine some 15 hours or more before the collision was legally relevant as to the issue of defendant's culpability. Its probative value was not outweighed by the possibility of prejudice. Point IV is denied. The judgment is affirmed.

GARRISON, P.J., and PREWITT, J., concur.