**STATE of Missouri, Respondent,**

v.

**Jesse L. NICHOLS, Appellant.**

**No. WD 64698.**

Missouri Court of Appeals,
Western District.

June 27, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 1, 2006.

Application for Transfer Denied
Sept. 26, 2006.

Craig A. Johnston, Columbia, MO, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before SMITH, C.J., NEWTON and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Jesse Nichols appeals from his convictions for first-degree burglary, second-degree burglary, stealing, sale of a controlled substance, and resisting arrest. Nichols contends the trial court erred in denying his motion to sever the charges and in overruling his objections to certain evidence at trial. He also contends the court lacked jurisdiction to proceed to trial on a substitute indictment, and that the evidence was insufficient to support his conviction on the charge of resisting arrest. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Viewed in the light most favorable to the verdict, the evidence adduced at trial established the following facts. Nichols developed a plan to burglarize homes in a small subdivision in Odessa, Missouri, where both the Miller family and Helen Day lived. That plan included calling a residence to make sure it was empty, breaking in the back door, looking for a safe, and escaping with cash and valuable items.

On both October 27 and 28, 2003, Nichols called the Miller home to ensure it was vacant. On October 29, he broke into the house through the back door. After smashing a safe and ransacking the house, he stole cash, collector's coins and bills, and two watches. On November 2, 2003, he gained entry to Helen Day's nearby home in a similar fashion but was frightened off when he realized she was home.

On November 19, 2003, police wired a confidential informant and sent him to Nichols' home. Using marked bills, the informant purchased stolen property and a small amount of methamphetamine from Nichols.

Police arrived at the home shortly thereafter to arrest Nichols and execute a search warrant. Nichols refused to comply with the police requests, and they eventually had to summon additional officers and use pepper spray to subdue him. During the search, police recovered the marked bills and property stolen from the Miller home, as well as a list of addresses and phone numbers for seventeen local residences, all but three of which were in the same Odessa subdivision. The police also found evidence to connect Nichols to the robbery of a convenience store that occurred on October 12, 2003.

Nichols was charged by information in Lafayette County with counts I and II for second-degree burglary, § 569.170[1] and felony stealing, § 570.030 (for the Miller burglary); count III for sale of a controlled substance, § 195.211; count IV for resisting arrest, § 575.150; and counts V and VI for second-degree burglary, § 569.170, and felony stealing, § 570.030 (the convenience store burglary).

In January 2004, Nichols was granted a change of venue to the Clay County Circuit Court. Six months later, a Lafayette County grand jury issued a substitute indictment, which the State filed in Clay County. The substitute indictment was identical to the original information but added count VII, a first-degree burglary charge, for the incident at Helen Day's home.

Nichols filed a motion to sever the seven counts into four separate cases. The trial court granted the motion in part by severing counts V and VI, both related to the convenience store burglary, from the remaining counts. Following a jury trial on counts I, II, III, IV, and VII, Nichols was found guilty of all charges. He was sentenced as a prior and persistent offender to serve consecutive terms of twelve years for second-degree burglary, ten years for felony stealing, and twenty-five years for first-degree burglary, and concurrent terms of ten years for distribution of a controlled substance and five years for resisting arrest. Nichols appeals the convictions.

## JOINDER

In Point I, Nichols contends the trial court erroneously denied his motion to sever and allowed improper joinder of the charges related to the Miller burglary (counts I, II), the Day burglary (count

---

1. All statutory references are to Missouri Revised Statutes 2000, unless otherwise noted.

VII), and the remaining charges for the distribution of methamphetamine (count III) and resisting arrest (count VI). He argues that the offenses should have been separately tried because they did not occur on the same date, were not the product of a single motive, and the tactics used did not indicate that the crimes were committed by the same person.

■ Appellate review of these claims of improper joinder and refusal to sever requires a two-step analysis. First, we must determine whether joinder was proper as a matter of law and, if so, only then do we consider whether the trial court abused its discretion in denying the motion to sever. *State v. Hyman*, 37 S.W.3d 384, 393 (Mo.App.2001). Joinder addresses what crimes can be charged in a single proceeding, while severance assumes that joinder is proper and gives the trial court discretion to determine whether substantial prejudice would result if the charges were tried together. *Id.* Because Nichols failed to offer any support in his argument section regarding severance, we consider that claim abandoned and review only his claim of improper joinder. *Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 124 (Mo.App.2001).

■ Missouri law favors liberal joinder of related crimes to achieve judicial economy. *State v. Dizer*, 119 S.W.3d 156, 161 (Mo.App.2003). Multiple offenses may be joined in the same information or indictment if they are of the same or similar character, are based on two or more acts that are part of the same transaction, or are of a common scheme or plan. Rule 23.05; § 545.140.2. The test of whether a common scheme or plan exists is whether all of the offenses charged are "products of a single or continuing motive." *State v. Jolliff*, 867 S.W.2d 256, 259 (Mo.App.1993). Joinder is proper if the manner in which the crimes were committed is so similar that it is likely the same person committed all charged offenses; however, identical tactics are not required. *Id.* The similarities may relate to the types of offenses committed, the types of victims targeted, the location where the offenses occurred, and the proximity in time. *Id.*

■ Upon consideration of these factors, we find no error in the joinder of the five charges against Nichols. The conduct charged in counts I, II, and VII was part of a common scheme or plan to burglarize homes in an Odessa subdivision. Nichols compiled a list of addresses and phone numbers of fourteen homeowners in the subdivision where the Miller family and Helen Day lived. He performed advance reconnaissance by calling both residences to ensure that no one was home and then committed the burglaries a week apart. The burglary and stealing charges in counts I, II, and VII were properly joined based on the similarities in the nature of the crimes committed at the Miller and Day homes, and the proximity of the crimes in time and location.

■ Joinder is also proper when criminal transactions can be "connected together" in a series or have parts or elements logically related. § 545.140.2; *State v. Morrow*, 968 S.W.2d 100, 109 (Mo. banc 1998). Nichols was involved in a "continuous chain of criminal activity" that involved burglarizing homes and then selling the stolen property from those homes at the same time he was selling methamphetamine. *Morrow*, 968 S.W.2d at 109. When police arrived at his home to execute search warrants related to the sale of stolen property and methamphetamine, Nichols resisted arrest. The crimes were linked together because the burglary led to the sale of contraband, which directly led to the arrest. Point I is denied, as the

trial court properly joined the charges in counts I, II, III, IV and VII.

## ADMISSION OF EVIDENCE

In Point II, Nichols contends the trial court erred in overruling his objection to the testimony of a witness concerning uncharged crimes. The court allowed a prosecution witness, Clyde Reno, to testify that Nichols supplied him with methamphetamine and that the two of them used the drug in October 2003. None of the charges against Nichols related to his drug use, and, therefore, he argues that Reno's testimony was irrelevant and more prejudicial than probative.

The trial court has broad discretion in determining whether to admit or exclude evidence. *State v. Carruth,* 166 S.W.3d 589, 590 (Mo.App.2005). We review such matters for an abuse of discretion and will reverse only upon a showing of prejudicial error. *Id.*

Evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Johnson,* 161 S.W.3d 920, 924 (Mo.App.2005). However, such evidence is admissible when it tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial; (6) a signature modus operandi. *Id.* at 924–25. Evidence of a "continuation of the sequence of events that presents a coherent picture of [a] crime" is also admissible. *See State v. Skillicorn,* 944 S.W.2d 877, 887 (Mo. banc 1997).

We need not determine whether the court erred in admitting Reno's testimony, because even if it did, Nichols is unable to establish prejudice. Any harm from Reno's testimony about being given methamphetamine was minimal in light of testimony from two other witnesses, not objected to or challenged in this appeal, that Nichols had given them methamphetamine on numerous occasions as well. There is no prejudice to a defendant when allegedly improper evidence was merely cumulative to other evidence admitted without objection establishing the same facts. *State v. Simms,* 131 S.W.3d 811, 817 (Mo.App.2004). Point denied.

In Point III, Nichols contends the trial court erred in admitting evidence that was unlawfully seized from his home. In particular, he asserts that tennis shoes, a $100 bill, a list of addresses and phone numbers found in vehicle, and a tire tool were not included in the search warrant and, thus, were outside the scope of items that could be reasonably seized under the Fourth Amendment.

The search warrant for Nichols' apartment allowed officers to recover, among other things: any illegal or controlled substances; papers relating to the purchase and distribution of controlled substances; items related to obtaining, secreting, transfer, concealment and/or expenditure of money; firearms; narcotics paraphernalia; items used in the manufacture of methamphetamine; and items believed to be stolen including jewelry, a watch, and coins. While executing the warrant, officers seized some of the listed items, as well as other non-listed items found in plain view that appeared to be related to the recent burglaries.

Under "[t]he plain view exception to the Fourth Amendment warrant requirement," an officer is permitted "to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be."

*State v. Kelly,* 119 S.W.3d 587, 592 (Mo. App.2003). The seizure of property in plain view is presumptively reasonable when probable cause exists to associate the property with criminal activity. *State v. Shaon,* 145 S.W.3d 499, 505 (Mo.App.2004). The incriminating nature of evidence is immediately apparent if "facts available to the officer would 'warrant a [person] of reasonable caution in the belief,' that certain items may be contraband." *Id.* (citation omitted).

■ With regard to the list of addresses recovered during the search, the evidence established that officers were aware of the burglaries in the same subdivision where most of the houses on the list were located. Seizure of the list was permissible because its incriminating nature was readily apparent to the officers. Likewise, seizure of the tire tool was permissible because it appeared capable of causing the pry marks found on the Miller's safe. Also, officers knew that a $100 bill had been given to an informant just hours before the execution of the search warrant; therefore, it was reasonable for them to believe the bill was evidence of the sale of a controlled substance and stolen property. Finally, officers knew that athletic shoes had been used to make footprints on the doors at two burglary scenes. Therefore, the incriminating nature of that evidence was also readily apparent.

We find no abuse of discretion in the trial court's admission of evidence that was lawfully obtained by the police pursuant to the plain view exception to the Fourth Amendment's warrant requirement. Point III is denied.

### SUFFICIENCY OF EVIDENCE

In Point IV, Nichols contends there was insufficient evidence to support his conviction for resisting arrest. He argues the evidence failed to show that he knew or should have known that he was being arrested for burglary, in that the officers only announced that they were entering his home for the purpose of executing a search warrant.

■ Our review is limited to a determination of whether there was sufficient evidence from which a reasonable trier of fact could have found Nichols guilty beyond a reasonable doubt. *State v. Villaneuva,* 147 S.W.3d 126, 128 (Mo.App.2004). We must accept as true all of the evidence and inferences favorable to the State and disregard all evidence and inferences to the contrary, giving great deference to the trier of fact. *Id.*

To convict Nichols of felony resisting arrest, the State had to prove that: (1) a law enforcement officer was making the arrest, (2) the arrest was for a felony offense, (3) Nichols knew or reasonably should have known that he was being arrested, and (4) Nichols used violence or physical force to resist the arrest for the purpose of preventing it. § 575.150, RSMo Cum.Supp.2004. Nichols alleges insufficiency of the evidence only for the third element, that he knew or should have known he was being arrested.

■ Nichols' argument is without merit. It is not necessary for the police to tell a suspect he is under arrest where the circumstances show that an officer is attempting an arrest. *State v. Chamberlin,* 872 S.W.2d 615, 619 (Mo.App.1994). Here, the uniformed officers announced that they were law enforcement and repeatedly ordered Nichols to show his hands, lay down, and put his hands behind his back. The instructions were specific enough to indicate that the officers intended to handcuff Nichols and arrest him. Nichols refused to comply and rose up from his sitting position to confront the officers. The officers used pepper spray and physical force

to disable Nichols and specifically told him to stop resisting, further demonstrating their intention to take him into custody. Viewed in a light most favorable to the State, the evidence established that Nichols should have known that the officers were attempting to arrest him. Point IV is denied.

### JURISDICTION

In Point V, Nichols contends Lafayette County lost jurisdiction to issue a substitute indictment, adding the Count VII burglary charge, once venue was transferred to the Clay County Circuit Court. Because the substitute indictment was improper, Nichols further contends Clay County did not have jurisdiction to accept it and proceed to trial on Count VII. This jurisdictional issue raises a question of law subject to our *de novo* review. *State ex rel. Nixon v. Moore*, 159 S.W.3d 488, 490 (Mo.App.2005).

Despite the early change of venue to Clay County, the law is clearly established that the Lafayette County grand jury had jurisdiction to issue an indictment against Nichols for any crimes committed in Lafayette County. § 541.033. The grant of a change of venue in the first proceeding has no effect on the ability of a grand jury to re-charge a defendant. *State v. Thomas*, 625 S.W.2d 115, 125 (Mo.1981) (citing *State v. Goddard*, 162 Mo. 198, 62 S.W. 697, 704 (1901); *State v. Patterson*, 73 Mo. 695, 700 (1881), *overruled on other grounds by State v. Roy*, 83 Mo. 268 (Mo. 1884)).

This issue was squarely addressed in *State v. Billings*, 140 Mo. 193, 41 S.W. 778 (1897). In *Billings*, the defendant argued that the grand jury of Bollinger County (where the offenses were committed) had no authority to seek a new indictment after a change of venue had been granted and the first indictment was transferred to Butler County. *Id.* at 780. He contended, as Nichols does here, that any substitute indictment should have been filed in Butler County. *Id.* The court stated, "[w]hile the circuit court of Butler county had jurisdiction of the cause which had been transferred to it, that fact in no wise prevented the grand jury of Bollinger county from finding a new indictment." *Id.* The court reasoned that no person can be tried for a felony except upon an indictment preferred by the grand jury of the county in which the offense is alleged to have been committed. *Id.*

Similarly in the case at bar, the Lafayette County grand jury had the jurisdiction to hand down a substitute indictment, even after venue had been transferred to Clay County. Point V is denied.

### CONCLUSION

The judgment of convictions is affirmed.

All concur.