**STATE of Missouri, Respondent,**

v.

**John J. HOLLIDAY, Appellant.**

**No. WD 66843.**

Missouri Court of Appeals,
Western District.

Aug. 7, 2007.

Craig Allan Johnston, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, MO for Respondent, Jayne

T. Woods, Asst. Attorney General, Jefferson City, MO, joins on the briefs for Respondent.

Before RONALD R. HOLLIGER, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

John Holliday appeals his jury convictions for two counts of first-degree statutory rape and three counts of first-degree statutory sodomy. Holliday contends that the trial court erred in denying his motion to dismiss for improper joinder of offenses. The judgment is affirmed.

### Factual and Procedural Background

In 2005, John Holliday was charged by felony information with two counts of first-degree statutory rape, section 566.032, RSMo,[1] and four counts of first-degree statutory sodomy, section 566.062. Count I charged Holliday with the statutory sodomy of his niece, D.R. (whom we will refer to as "Diane").[2] The alleged victim in the other five counts was Holliday's daughter, F.H. ("Francine").

Prior to his trial, Holliday filed a motion for severance of offenses or dismissal due to improper joinder of offenses. He alleged that joinder of the six offenses was improper as a matter of law because the charges are not of the same or similar character, are not based on the same act or transaction, and are not part of a common scheme or plan, as required by Rule 23.05 and section 545.140.2. Even if joinder was proper, Holliday argued, severance should be granted under section 545.885, because trying all the charges together

would result in substantial prejudice to him. The motion to sever or dismiss was taken up at a hearing on October 19 and denied.

A jury trial was held in February 2006. Holliday renewed his motion to sever or dismiss at that time. The court, again, denied the motion. The pertinent evidence as to each of the counts is presented below in the light most favorable to the verdict and in chronological order.

### Counts II and III (Francine)

In counts II and III, Holliday was charged with statutory rape and statutory sodomy of his daughter, Francine, between the dates of June 1 and June 30, 2000. The following evidence was presented at trial with regard to those charges.

John Holliday has two daughters: Gina, who was born in 1993, and Francine, born in December of 1994. Holliday separated from the girls' mother in 1997. A few months later, he moved in with his sister, Ruth, and her two children. One of the bedrooms in Ruth's home became Holliday's. Gina and Francine visited Holliday at the trailer every weekend. The girls would alternate who slept in the bedroom with Holliday.

On Father's Day weekend in 2000, when Francine was five years old, she and Gina were visiting Holliday. Francine was sleeping in Holliday's bedroom on a pallet of blankets on the floor. She was wearing a nightgown and underwear. Francine testified that Holliday first removed all of his clothes. He then pulled up her nightgown and pulled down her underwear.

---

1. Unless otherwise indicated, all statutory references are to the Revised Statutes of Missouri, 2000.

2. The names of all the children, the mothers of the children, and Holliday's sister have been changed in this opinion in an effort to protect their privacy. Name change was selected as an alternative to the use of initials, which this writer does not favor.

Holliday raped Francine while she was lying on her back, and then sodomized her by placing his penis in her mouth. Francine asked him to stop, but he did not respond. Afterwards, Holliday told Francine not to tell or he would go to jail and she would not get to see him anymore. Francine said Holliday repeated these acts with her "almost every weekend" during the period charged.

### Counts IV and v. (Francine)

Counts IV and V charged Holliday with the statutory rape and statutory sodomy of Francine between March 15 and April 15, 2001, about a year later. The evidence regarding those charges showed that in April 2001, Francine's mother took her to the doctor because she complained that her "girl part"[3] hurt and her vaginal area was visibly red. The weekend before she went to the doctor Francine had been visiting Holliday. That weekend, Holliday had again pulled up her nightgown and pulled down her underwear. She again was sleeping on a pallet on the floor, and Holliday raped her in the same manner as before. He also again put his penis into her mouth. Afterwards, he warned Francine not to tell or he would go to jail and she would not see him anymore. When Francine told Holliday she was going to see the doctor, he told her to tell the doctor she had been "poked by a tattoo needle." She did not do so, nor did she inform the doctor she had been molested. The doctor prescribed a cream for the irritation.

The next weekend the girls again visited Holliday. While Francine was in Holliday's bedroom, lying on the pallet on the floor, Holliday again raised her nightgown and pulled down her underwear. He then raped her and sodomized her in the same manner as before. Holliday again told

Francine not to tell, or he would go to jail and she would not get to see him.

In August 2001, Holliday was involved in a vehicular crash that left him in a wheelchair. The girls' weekend visits to his residence temporarily stopped. He came to visit them elsewhere. Francine testified that around the time of the motorcycle wreck, when she was seven or eight years old, the sexual abuse stopped. In January 2003, Holliday moved into a one-bedroom house. The girls resumed visiting alternating weekends.

### Count I (Diane)

Count I charged Holliday with the statutory sodomy of his ten-year-old niece, Diane, between the dates of February 28 and March 7, 2004. Holliday was acquitted of this count, but because he raises the improper joinder of this count with the others, it is necessary to examine the evidence pertaining to that charge as well.

Diane is the daughter of Holliday's other sister, Theresa. On the weekends when Francine and Gina were not visiting, Holliday's nieces, and sometimes a nephew, would spend the weekend with him at his house. The kids usually slept in the living room, and Holliday slept in his bedroom. On the weekend of February 28, 2004, there was not enough room in the living room for everyone to sleep. Holliday had the children draw straws or numbers to determine who would sleep in the bedroom with him. Diane, who was ten years old at the time, was chosen.

Everyone went to bed around 10:00 p.m. Diane slept on a pallet of blankets on the floor in Holliday's room, and Holliday slept on the bed. Diane wore sweatpants and a sweatshirt to bed, with a bra and underwear underneath. Diane testified that

**3.** Francine used this same terminology when discussing the details of the rape.

sometime during the night, she woke up because she felt someone pulling her pants down. She was lying on her stomach, she said. She tried to see who it was, but could not because the room was too dark. She believed it was Holliday, she said, "because he was the only boy in the house" and she recognized his voice when he spoke. Diane's testimony indicated that she was then anally sodomized by what she believed was Holliday's "private" (her word for penis). When she tried to get away from him, she said, Holliday told her to "wait," and he put his entire weight on her. Diane told him to get off her, because it "wasn't right." She threatened to scream. At that point, Holliday got off of her, she said. Holliday then sat on the bed and made Diane "pinkie-swear" that she would not tell anyone what had happened. She said that he told her that if she told, he would go to jail and she would never get to see him again. He also said her mom would get mad at her. Diane said Holliday then went into the bathroom, and Diane went in to sleep by her sister.

The next day, Diane told her cousin her allegations about what Holliday had done to her. About a week later, Diane told her sister. Diane's sister told their mom, Theresa, that Diane had been raped. Theresa immediately called Diane to her and asked Diane who had touched her. Diane named Holliday as her molester. Theresa took Diane to the police station to make a report.

### Count VI (Francine)

In count VI, Holliday was charged with statutory sodomy of Francine between November 1 and December 31, 2004. The evidence pertaining to that charge showed that after Holliday moved into a house on St. Joseph Avenue, Francine and Gina began visiting him every other weekend. One of those weekend visits took place between Thanksgiving and Christmas in 2004. Francine was nine years old. One evening, Francine and Gina were watching a movie. Francine was on the couch, and Gina was on the floor, facing the television. Holliday sat down on the couch and put Francine's legs across his lap. Francine was wearing a nightgown and underwear. Holliday put his hand up her nightgown, moved her underwear to the side, and touched her vaginal area on the inside and outside. Francine curled up in order to get Holliday to stop touching her, but he did not stop. He eventually left the room.

Holliday later came back and watched television with the girls. Francine pretended to be asleep, but Holliday woke her up and took her to the kitchen. He apologized and made her "pinkie-swear" not to tell anyone. He said that if she told, she would not get to see him anymore. Francine agreed to the "pinkie-swear" and went back to the living room where she slept the rest of the night. After that weekend, Francine and Gina stopped visiting Holliday.

Around New Year's 2005, the girls met Holliday at a mall so he could buy them some Christmas presents. He had moved out of his house, but he told the girls he was going to rent another house and they would be able to start visiting him every weekend again. This news frightened Francine, because of her fear he would start touching her again.

Sometime around the first of February, Francine was at home when she felt that God wanted her to tell someone what Holliday had done to her. Francine first told her step-father, Robert, because her mom was not home. Crying and distraught, Francine told Robert that Holliday had been touching her. When her mom returned home a short time later, Francine told her the same thing, indicating that Holliday had been touching her genitals.

The next morning, Francine's mom took Francine to the police to file a complaint.

Both Francine and Diane testified at trial about what Holliday had done to them. The State's evidence also included testimony from Francine's mother and Robert, as well as Diane's mother.[4] Holliday testified in his own defense and denied all of the allegations. He also presented testimony from his other daughter, Gina, who indicated that Holliday had never touched her in a sexual manner and that she never saw anything unusual between Holliday and Francine.

The jury returned a not guilty verdict on count I, the statutory sodomy charge involving Diane. The jury found Holliday guilty of counts II through VI, the charges relating to Francine. The court sentenced Holliday as a prior and persistent offender to thirty years' imprisonment on each count, with counts II and III concurrent to each other, and counts IV, V, and VI concurrent to each other but consecutive to counts II and III.

In his motion for new trial, Holliday included a claim that the court erred in denying his motion for severance or dismissal for improper joinder of offenses. The court denied the motion.

Holliday appeals.

## Argument

In his single point on appeal, Holliday argues that the trial court erred in denying his motion to dismiss for improper joinder in violation of Rule 23.05 and section 545.140.2. Specifically, he claims that the charge involving Diane, count I, was improperly joined with the other five offenses in which Francine was the victim, counts II through VI.

### Review

Appellate review of claims of improper joinder and failure to sever involves a two-step analysis. *State v. Kelly*, 956 S.W.2d 922, 925 (Mo.App.1997). First, we must determine whether joinder was proper as a matter of law. *State v. Nichols*, 200 S.W.3d 115, 119 (Mo.App.2006). If not, then prejudice is presumed and severance is mandatory. *Kelly*, 956 S.W.2d at 925. If joinder was proper, we then must determine whether the court abused its discretion in denying the defendant's motion to sever. *Nichols*, 200 S.W.3d at 119. Severance assumes that joinder is proper, but gives discretion to the trial court to decide whether trying the charges together would result in substantial prejudice. *State v. Hyman*, 37 S.W.3d 384, 393 (Mo.App.2001); *see also* section 545.885.2 (the court *"may grant* a severance of offenses" if it appears that either party "is substantially prejudiced" by joinder of the offenses (emphasis added)).

On appeal, Holliday does not—either in his point relied on or in the argument portion of his brief—reassert his claim as to severance of the offenses. He argues only that the court erred in denying his motion as to joinder. In *Nichols*, 200 S.W.3d at 119,[5] where the appellant failed

---

4. The State also presented testimony from police officers and detectives involved in the case, a counselor who had interviewed both Francine and Diane, and a medical doctor who had examined Francine.

5. *Cf. State v. McQuary*, 173 S.W.3d 663, 670 (Mo.App.2005) (where appellant raised issue of severance on appeal but had never filed a written motion to sever, nor argued the issue before the trial court, this court limited its review to the propriety of joinder and did not address severance); *State v. Simmons*, 158 S.W.3d 901, 909 (Mo.App.2005) (conversely, where appellant raised only the issue of severance in his motion for new trial, the court found that joinder was not preserved for review and would not be addressed).

to offer any support in his argument regarding severance, we concluded that the claim had been abandoned, and we considered only the claim of improper joinder. The same reasoning applies here. Thus, we consider only whether joinder was proper as a matter of law. *See id.*

### Joinder

There is, strictly speaking, no constitutional right to be tried for one offense at a time. *State v. McQuary*, 173 S.W.3d 663, 670 (Mo.App.2005). Liberal joinder of offenses is favored in Missouri as a means of achieving judicial economy when joinder can be accomplished consistent with lawful considerations. *Nichols*, 200 S.W.3d at 119. Joinder of offenses is governed by Rule 23.05 and section 545.140.2. Pursuant to both, joinder is proper where the charged offenses are part of the same act or transaction, or part of a common scheme or plan, or are of the same or similar character. *Kelly*, 956 S.W.2d at 925. Rule 23.05 states that

> [a]ll offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.[6]

Here, the State does not argue that the charged offenses are part of the same transaction or part of a common scheme or plan. Instead, the State contends that the offenses are "of the same or similar character," pursuant to Rule 23.05 and section 545.140.2.

"The propriety of joinder is fact dependent." *McQuary*, 173 S.W.3d at 670. In determining whether there has been a misjoinder of offenses, we consider only the State's evidence. *Kelly*, 956 S.W.2d at 925. Obviously, this is because the State's decision as to seeking joinder is based on the evidence the state anticipates presenting. For joinder of offenses to be proper, the manner in which the crimes were committed, or the connection otherwise between the offenses, must be so similar or so related that the manner or the relationship is pertinent evidence that the same person committed all the charged offenses. *Hyman*, 37 S.W.3d at 393. The use of similar or comparable tactics is sufficient to show that the offenses are the same or similar character for purposes of joinder. *Kelly*, 956 S.W.2d at 925. The tactics need only resemble or correspond with one another; they do not need to be identical. *Id.* "Nonexclusive factors [that show] similar tactics include commission of the same type of offenses, victims of the same sex and age group, offenses occurring at the same location, offenses closely related in time." *Hyman*, 37 S.W.3d at 393.

Holliday says the following differences show that joinder was improper in this case. He points out that Diane was alleged to have been assaulted once in 2004 in one act of anal sodomy, while Francine was assaulted over several years beginning in 2000, and those assaults included both rape and non-anal sodomies. Holliday notes that the act involving Diane occurred at a different residence than four of the offenses involving Francine. And, he says, even though the act against Diane occurred in the same house as the last act

---

6. Similarly, section 545.140.2 provides in pertinent part that

> two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses

> charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

against Francine, it took place in a different location in the house and under different circumstances (in the morning with no one present, versus in the evening with Francine's sister in the same room). Thus, Holliday argues, the tactics used in count I were not so similar to those used in the other five counts as to show that the offenses were of the same or similar character, and joinder was improper.

Holliday discusses three cases in which the appellate courts found joinder to be improper: *State v. Saucy*, 164 S.W.3d 523 (Mo.App.2005); *State v. Bird*, 1 S.W.3d 62 (Mo.App.1999); and *State v. Kelly*, 956 S.W.2d 922. He contends that this case is analogous to those cases. We disagree. The differences Holliday lists in his brief are not equivalent to the differences that rendered joinder improper in those cases. Furthermore, none of those cases involved sex crimes and, thus, are not that helpful in a case such as this.

In *State v. Conley*, 873 S.W.2d 233, 238 (Mo. banc 1994), the State joined multiple counts of sodomy and sexual assault on five boys, ages twelve and under, that occurred at the same group home where the defendant was a houseparent. The Missouri Supreme Court noted that all of the charged offenses joined by the State were of illicit sexual conduct toward minors that occurred during a two-year time frame · at a specific location. *Id.* These

facts, the Court found, were sufficient to meet the requirements of the rule that permits joinder of offenses "of the same or similar character," and joinder was proper. *Id.*

Similarly, in *Hyman*, 37 S.W.3d at 394, this court upheld the joinder of crimes involving separate sexual offenses against two fourteen-year-old girls that occurred in the same neighborhood, but seven weeks apart. Similar tactics were used to lure the two girls into the same abandoned house, where the perpetrator then committed multiple acts of sodomy and rape against them in a similar manner. *Id.* This court found that similarities in the tactics used during the two attacks make it likely that the defendant committed all the offenses charged. *Id.*[7]

We find these cases to be more analogous than those cited by Holliday. The mere existence of differences among the counts does not defeat joinder; the minor discrepancies Holliday cites do not render joinder improper here. When there are striking similarities between the crimes, the strength of the similarities can overcome minor differences in the details. *See State v. Dizer*, 119 S.W.3d 156, 161 (Mo. App.2003). Contrary to Holliday's contentions, the tactics used in all the charged crimes in this case appear strikingly similar.

---

**7.** The court in *Hyman*, 37 S.W.3d at 394 n. 41, listed other cases (equally pertinent to this case), in which the court found proper joinder · of offenses involving illicit sexual conduct with minors because the tactics used showed the offenses to be of the same or similar character:

[*State v.*] *Pasteur*, 9 S.W.3d [689,] 694 [(Mo.App.1999)] (The defendant subjected two female high school students to child endangerment and sexual misconduct by touching their breasts and by using his position as an educator to gain their trust.); [*State v.*] *Hemme*, 969 S.W.2d [865,] 869–

870 [(Mo.App.1998)] (Acts of rape, sodomy, and deviate sexual assault against two female teenagers occurred within a three-month period after the defendant lured the victims into a bedroom, removed their clothing, disregarded their objections, performed deviate sexual intercourse, and badgered them for sexual intercourse); [*State v.*] *Meder*, 870 S.W.2d [824,] 828 [(Mo.App.1993)] (The defendant raped his three preschool daughters in the same house within a two-week period and threatened to kill them after the rapes.).

Both Diane and Francine were young girls, ten-years-old or younger at the time of the charged actions. Both were closely related to Holliday: Diane is his niece, and Francine is his daughter. All of the charged actions occurred when the girls were staying overnight with Holliday on weekend visits. All counts occurred when the girls were in their bed-time clothing (nightgown or sweats). All involved Holliday pulling down the girls' pants and/or underwear, or moving it aside, for access to their vagina or anus. All but one of the charged crimes, though occurring at different residences, occurred on a pallet of blankets in Holliday's bedroom. In each of *those* counts, one of the girls slept in Holliday's room while the other children slept elsewhere. All counts involved acts of illicit sexual contact. All counts involved Holliday warning the girls, after the contact, not to tell or he would go to jail and they would not get to see him anymore. The count involving Diane and the last count involving Francine both occurred in 2004 and at the same residence. Holliday made both girls "pinkie-swear" not to tell after the sexual contact. He told both girls that if they told on him, he would go to jail and they would not get to see him anymore.

These alleged similarities are sufficient to cause the crimes to be logically related in a significant way. *See State v. Langston*, 889 S.W.2d 93, 96 (Mo.App.1994). They also correspond with many of the factors that show "similar tactics." *See Hyman*, 37 S.W.3d at 393 ("the same type of offenses, victims of the same sex and age group, offenses occurring at the same location, offenses closely related in time"). As noted, the perpetrator's tactics need only resemble or correspond with one another, they do not need to be identical. *Kelly*, 956 S.W.2d at 925.

The similarities in this case establish that the act in count I was of the same or similar character as those charged in counts II–VI. Therefore, joinder was not improper as a matter of law, and Holliday's claim fails.

■ Holliday says he is entitled to a new trial "in any event," and he then recites the evidence that was favorable to his defense. This appears to be an argument that the evidence was insufficient to support the conviction, though he never uses those terms. Holliday does not include a claim of insufficient evidence in his point relied on, and has, therefore, failed to preserve any such claim for appellate review. *See State v. Hauserman*, 64 S.W.3d 893, 899 n. 2 (Mo.App.2002).

## Conclusion

For the foregoing reasons, the judgment is affirmed.

HOLLIGER and LOWENSTEIN, JJ., concur.