

# SUPREME COURT OF MISSOURI
## en banc

State of Missouri,  )
  )
  Respondent,  )
  )
vs.  )  No. SC93851
  )
Sylvester Porter,  )
  )
  Appellant.  )

### APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
The Honorable Timothy J. Wilson, Judge

*Opinion issued July 29, 2014*

Sylvester Porter appeals a judgment convicting him of two counts of statutory sodomy in the first degree. Porter argues that the trial court erred in denying his motion for judgment of acquittal because the victim's testimony was contradictory and lacked corroboration. Porter's argument is based on the "corroboration rule" and the "destructive contradictions" doctrine.[1] This Court abolishes both the corroboration rule and destructive contradictions doctrine because, among other reasons, both require appellate courts to act as the finder of fact. Review of the record according to the

---

[1] As explained in more detail below, the corroboration rule provides that an appellate court is to disregard a sex crime victim's testimony if it is contradictory and uncorroborated. The destructive contradictions doctrine permits an appellate court to disregard testimony relevant to an element of the crime if the court determines that the testimony is inherently incredible.

applicable standard of review demonstrates there was sufficient evidence to support the jury's finding that Porter committed statutory sodomy.

Porter also contends that the trial court erred in allowing the jury to have unrestricted access to the videotaped forensic interview of the victim during its deliberations. This point is without merit because Porter did not object or develop a factual record showing the extent of the jury's review of the video.

The judgment is affirmed.

## Facts

Porter managed a rooming house where A.L. rented a room for herself and her three-year-old daughter, K.W. Porter, also known as "J-Money," had a room at the boarding house.

One weekend, K.W.'s grandmother took care of K.W. while A.L. was away. Grandmother awakened from a nap and discovered that K.W. was gone. Grandmother found K.W. in Porter's room. K.W.'s pants were off, and Porter was shirtless. Porter's head was between K.W.'s legs.

Grandmother removed K.W. from Porter's room. K.W. told Grandmother that Porter was "sniffing around down there" and "messing with her bottom part." When A.L. returned approximately one half hour after the incident, K.W. told A.L. that Porter touched her "kookoo," which was K.W.'s word for her vagina. A.L. then confronted Porter, who denied touching K.W. K.W. overheard Porter's denial and told him "yes you did, you touched my kookoo." A.L. called the police.

Grandmother later described Porter's actions to a children's division employee in terms of performing oral sex on K.W. Approximately two weeks later, K.W. told a forensic interviewer at the Child Advocacy Center (CAC) that Porter put his hand in her private part, touched her private part with his tongue, and put his private part on her face near her eye. The interview was recorded and admitted into evidence at trial.

The State charged Porter with two counts of first-degree statutory sodomy for touching K.W.'s vagina with his hand (Count I) and with his tongue (Count II). The State also charged Porter with one count of first-degree child molestation for touching K.W.'s head with his penis (Count III).

K.W. was five years old when she testified at Porter's trial. K.W. testified that Porter touched her private part with his hand but not with any other part of his body. K.W. also testified as follows:

Q: K.W. can you say whether J-Money really touched you?

A: Huh-huh.

Q: Did he really touch you or not?

A: Not.

Q: He didn't touch you?

A: (Shakes head.)

Q: Or he did touch you?

A: He did.

Q: He did.

A: (Nods head.)

A jury convicted Porter on all three counts. Porter filed motions for judgment of acquittal on all three counts on grounds that there was insufficient evidence to convict because K.W.'s testimony was contradictory and uncorroborated. The circuit court sustained Porter's motion as to the child molestation charge (Count III) but overruled the motions as to the statutory sodomy charges (Counts I and II). The circuit court sentenced Porter to two concurrent sentences of 25 years in prison.

Porter raises two points on appeal, asserting that there was insufficient evidence to support his convictions on Counts I and II because K.W.'s testimony was inherently contradictory and lacked corroboration

## Standard of Review

An appellate court's review of the sufficiency of the evidence to support a criminal conviction is limited to determining whether there is sufficient evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). All evidence and inferences favorable to the State are accepted as true, and all evidence and inference to the contrary are rejected. *State v. Stover*, 388 S.W.3d 138, 146 (Mo. banc 2012). "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder 'could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011) (quoting *State v. Bateman*, 318 S.W.3d 681, 686-87 (Mo. banc 2010)).

4

## The corroboration rule

Generally, a witness's testimony is sufficient evidence to sustain a conviction, and the trier of fact is left to determine credibility issues. *State v. Ervin*, 835 S.W.2d 905, 921 (Mo. banc 1992). In cases involving sex crimes, however, Missouri courts have created a "corroboration rule" providing that "when the evidence of such prosecutrix is of a contradictory nature or leaves the mind of the court clouded with doubt, she must be corroborated, or the judgment cannot be sustained." *State v. Tevis*, 136 S.W. 339, 341 (Mo. 1911); *see also State v. Baldwin*, 571 S.W.2d 236, 239 (Mo. banc 1978) (corroboration is required when the witness's testimony "is of a contradictory nature or, when applied to the admitted facts in the case, her testimony is not convincing and leaves the mind of the court clouded with doubts"). Under this formulation, corroboration is required if the witness's testimony is determined to be contradictory or if the appellate court's review of the evidence raises some undetermined level of uncertainty regarding the evidentiary support for the conviction. Alternatively, this Court has stated that the corroboration rule applies when "'the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is thereby rendered doubtful.'" *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995) (quoting *State v. Harris*, 620 S.W.2d 349, 353 (Mo. banc 1981)). This formulation appears limited to instances in which the witness's testimony is contradictory.

The corroboration rule, under either formulation, suffers from at least two fundamental defects warranting abolition of the rule. First, the corroboration rule requires an appellate court to engage in credibility determinations that are the province of

5

the trier of fact. To apply the corroboration rule, the court must make what amounts to a factual determination that the testimony is sufficiently contradictory and insufficiently corroborated. By requiring appellate courts to make these determinations, the corroboration rule is inconsistent with the appropriate standard of review for challenges to the sufficiency of the evidence. That standard is premised on the notion that appellate courts are not a "super juror" with the power to override factual determinations supported by sufficient evidence. *See Chaney*, 967 S.W.2d at 52. Appellate courts defer to factual determinations because the trier of fact, whether a judge or jury, is "in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *Essex Contracting, Inc. v. Jefferson Cnty*., 277 S.W.3d 647, 652 (Mo. banc 2009); *see also Suhre v. Busch*, 123 S.W.2d 8, 19 (Mo. 1938) (the trier of fact is entitled to deference regarding factual issues because it has "many opportunities, necessarily denied to the appellate court of seeing and hearing the witnesses themselves, observing their demeanor while testifying, and of determining the weight which properly attaches to their testimony"). The corroboration rule requires appellate courts to make factual determinations they are ill-equipped to make. Rather than second-guessing the trier of fact, Missouri appellate courts simply should abide by the well-established standard of review for challenges to the sufficiency of the evidence to support a criminal conviction.

Second, because the corroboration rule applies only to sex crimes, the rule necessarily is premised on two assumptions: (1) that the testimony of sex crime victims is

inherently less credible than the testimony of other crime victims; and (2) that judges and juries are uniquely unable to make accurate factual determinations in sex crime cases. Both assumptions are unsupported. There is no reason to assume that the victim of a sexual assault is less credible than the victim of a non-sexual assault, a robbery or any other crime. As the Supreme Court of Idaho observed, in the same case in which it abolished that state's corroboration rule, "there is no evidence showing that sex crime charges are frequently falsified or that sexual victims are an inherently unreliable class whose testimony should not be believed in the absence of corroboration." *Idaho v. Byers,* 627 P.2d 788, 790 (Idaho 1981).

Likewise, there is no reason to assume that judges and juries in sex crime cases are uniquely unable to arrive at accurate factual determinations relative to judges and juries in other criminal cases. To the contrary, as noted above, Missouri law long has recognized that judges and juries are in a superior position to resolve factual disputes. The corroboration rule is based on unsupported assumptions regarding sex crime victims and is inconsistent with the proper role of appellate courts.

The corroboration rule is abolished in Missouri. Missouri appellate courts reviewing the sufficiency of the evidence to support a conviction for a sex crime, as in all other criminal cases, will review challenges to the sufficiency of the evidence pursuant to generally applicable standard of review.

**The destructive contradictions doctrine**

The destructive contradictions doctrine provides that a witness's testimony "loses probative value when his or her statements at trial are so inconsistent, contradictory, and

7

diametrically opposed to one another that they rob the testimony of all probative force." *State v. Uptegrove*, 330 S.W.3d 586, 590 (Mo. App. 2011) (quoting *State v. Goudeau*, 85 S.W.3d 126, 132 (Mo. App. 2002). Like the corroboration rule, the destructive contradictions doctrine permits an appellate court to disregard testimony that it determines is inherently incredible, self-destructive or opposed to known physical facts with respect to an element of the crime. *State v. Wright*, 998 S.W.2d 78, 81 (Mo. App. 1999). Unlike the corroboration rule, the destructive contradictions doctrine is not limited to cases involving sex crimes. *State v. Wadel*, 398 S.W.3d 68, 79 (Mo. App. 2013).

Although the destructive contradictions doctrine has not been limited to sex crimes, the doctrine is abolished because, like the corroboration rule, it too requires appellate courts to engage in credibility determinations that are properly left to judges and juries sitting as triers of fact. Consequently, this Court rejects Porter's argument to adopt a single, updated rule combining the corroboration rule and destructive contradictions doctrine. Porter's points challenging the sufficiency of the evidence will be reviewed according to the generally applicable standard of review for points on appeal alleging insufficient evidence to support a conviction.

**Sufficiency of the evidence**

Porter argues the trial court erred in denying his motion for judgment of acquittal on Count I because the evidence of guilt was insufficient to support his conviction for first-degree sodomy for touching K.W.'s genitals with his hand (Count I) or with his tongue (Count II).

"A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." Section 566.062.1 Deviate sexual intercourse is defined as:

> any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim.

*Id.*

Porter asserts that K.W.'s testimony regarding whether Porter touched her genitals with his hand or his tongue was so contradictory and inconsistent that it cannot constitute substantive, probative evidence. This argument is foreclosed by this Court's abolition of the corroboration rule and the destructive contradictions doctrine. Instead, this Court reviews the record to determine whether there is sufficient evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Chaney*, 967 S.W.2d at 52.

As Porter notes, there were inconsistencies in K.W.'s trial testimony and out-of-court statements. During K.W.'s redirect examination testimony, she initially denied that Porter touched her vagina with his hand. The prosecutor asked K.W. again if Porter had touched her. K.W. then affirmed that Porter had touched her. Porter asserts that K.W.'s credibility is further damaged by K.W.'s affirmative response to a question asking whether K.W.'s grandmother "told her to say those things" about Porter.

9

With respect to Count II, Porter asserts the only evidence the State presented regarding Count II was K.W.'s out-of-court statement to the forensic interviewer that Porter touched her private part with his tongue. Porter notes that this statement contradicts K.W.'s testimony that Porter only touched her vagina with his hand.

The inconsistencies in K.W.'s testimony do not render the evidence insufficient. K.W.'s testimony that Porter had touched her genitals with his hand was consistent with out-of-court statements admitted into evidence pursuant to section 491.075.[2] For instance, K.W. told the CAC interviewer that Porter had touched her vagina with his hand. Although she indicated later in the interview that Porter had touched her genitals only with his tongue, the jury was in the best position to resolve credibility issues. This Court previously has recognized that the trier of fact is generally in the best position to resolve inconsistent testimony by the child victim of a sex crime. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995). In addition, there was evidence that K.W. told A.L that Porter had touched her and contemporaneously refuted Porter's denial by stating that Porter had in fact touched her vagina.

The jury resolved the inconsistencies in the context of evidence that placed K.W., without pants, alone with a shirtless Porter in his room with his head between her legs,

---

[2] Section 491.075 provides that a "statement made by a child under the age of fourteen … relating to an offense charged under chapter 55, 56, 568, 573, performed by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted …." The trial court admitted K.W.'s statements following a hearing in which the court determined the statements contained sufficient indicia of reliability to qualify for admission under the statute. Porter does not contest that admissibility of K.W.'s statements.

engaging in activity that Grandmother witnessed and described in terms consistent with oral sex. When the evidence is viewed, as it must be, in the light most favorable to the State, this Court concludes that there was sufficient evidence to permit a rational fact-finder to find beyond a reasonable doubt that Porter touched K.W.'s genitals with his hand and with his tongue. There is sufficient evidence to support Porter's convictions for statutory sodomy.

**Jury's access to videotapes of the forensic interview**

In his final point, Porter asserts that the trial court erred in allowing the jury unrestricted access to the videotaped CAC interview of K.W. during its deliberations. Porter contends the trial court should have controlled the jury's exposure to the videotape rather than allowing it to have unlimited access to the tapes. Porter argues that allowing the jury to have unlimited access to the tapes creates a presumption that the jury gave undue weight to the evidence on the tapes.

The record does not demonstrate whether Porter objected to the trial court's decision to permit the jury to view the tapes. Instead, the record reflects that the jury sent a note to the judge asking for "all defense and state exhibits[,] videos, lab reports, etc." and that the judge provided the jury with "the items requested." Further, the record shows that, during closing argument, Porter asked the jury to view the tapes. Porter, therefore, had an opportunity to raise the issue of extent of the jury's access to the tapes. The situation in this case is, therefore, similar to *State v. Naucke*, 829 S.W.2d 445 (Mo. banc 1992), in which this Court affirmed a sodomy conviction and rejected the defendant's argument that the trial court erred by allowing the jury to view a videotape of

11

the juvenile victim's interview by sexual abuse specialists.  In *Naucke*, the record was insufficient to determine whether the defendant objected to tapes, so this Court concluded that "in the absence of any record showing what occurred at the trial level related to this claimed error, the Court on appeal is obligated to affirm the trial court."  *Id.* at 460. Porter's claim, like the one in *Naucke*, is both unpreserved and speculative and, as such, cannot serve as a basis for reversing the judgment of conviction.

The judgment is affirmed.


_____
Richard B. Teitelman, Judge

All concur.