

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD78010 |
| | ) | |
| v. | ) | OPINION FILED: February 23, 2016 |
| | ) | |
| MAURICE D. WEAVER, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
The Honorable R. Michael Wagner, Judge

Before Division One: Lisa White Hardwick, Presiding Judge, Victor C. Howard, Judge
and Gary D. Witt, Judge

Maurice D. Weaver ("Weaver") appeals the judgment of the Circuit Court of Cass

County, Missouri ("trial court"), finding him guilty, after a bench trial, of one count of

robbery in the first degree, section 569.020,[1] and one count of armed criminal action,

section 571.015. Weaver was sentenced as a prior and persistent offender.

On appeal, Weaver contends that the trial court erred in convicting him because

the State's main witness' testimony was so inherently contradictory as to be objectively

---

[1] All statutory references are to RSMo 2000 cumulative as currently supplemented, unless otherwise noted.

unreasonable. Weaver further contends that the trial court erred because the testimony presented by the State was insufficient to support his conviction.

We affirm.

## Factual Background[2]

Weaver was charged in the Circuit Court of Cass County with one count of robbery in the first degree and one count of armed criminal action. These charges arose out of the robbery of a Sonic Drive-In restaurant in Raymore, Missouri, ("Raymore Sonic") on the evening of January 12, 2012.

Prior to the crime, late in November of 2011, Weaver began a relationship with Julie Jamieson ("Jamieson"). Weaver would stay at Jamieson's house two or three times a week. Additionally, Jamieson allowed Weaver to drive her Cadillac DeVille and Jamieson added Weaver as an additional insured on the car's insurance.

On January 12, 2012, prior to the robbery, Weaver asked Jamieson for some gloves, toy guns and bandanas. Jamieson gave Weaver some gloves and purchased him a red and a blue bandana, but she had no toy guns. Jamieson was aware that Weaver possessed a real handgun, which was black and silver. Weaver and Derron White ("White") asked Jamieson to drive them to the Sonic Drive-In in Belton, Missouri ("Belton Sonic"). Near closing time, Jamieson dropped Weaver and White off at the Belton Sonic and then, at their request, waited for them down the street.

---

[2] We consider the testimony in a light most favorable to the verdict and contrary evidence and inferences are disregarded. *State v. Rutter*, 93 S.W.3d 714, 720 (Mo. banc 2002).

Shortly thereafter, Weaver and White returned to Jamieson's car without any food. Weaver told Jamieson to drive them to the Raymore Sonic. When Jamieson refused, Weaver pointed his black and silver handgun at Jamieson and threatened to kill her and her children. Jamieson then drove to the Raymore Sonic where Weaver told her to drop him and White off at a place down the street. Weaver then told Jamieson to park across the street and wait for them to return.

Near closing time at the Raymore Sonic, Justin Drew ("Drew"), a Sonic employee, "heard some commotion and went to the front of the store." There, he saw two masked and armed men, who then forced Drew and two other employees to the ground. Drew "volunteered to . . . help them get into the safe." Drew gave the two masked men the money from the safe, and the men left.

Detective Rachel Jacobson ("Jacobson") responded to the report of the robbery at the Raymore Sonic and arrived at around 11:40 p.m. A belt was left behind from the robbery which surveillance video confirmed fell off one of the robbers. Testing of the belt developed a DNA profile that registered a hit on the CODIS database to White. From the surveillance video, Jacobson noticed that the robbers were wearing gloves and that one of the robbers was wearing a red bandanna and the other had "something dark-colored over his face."

After waiting "[l]ess than five minutes," Jamieson heard police sirens and left the spot where Weaver told her to wait. Jamieson then drove around for a couple hours before returning to her home. When Jamieson entered her home, Weaver confronted her and said, "I should kill you right now." Weaver and White then counted and divided

3

money in Jamieson's living room. Afterwards, Jamieson drove White to his home and she returned to her own home. Weaver was still at her home when she returned.

After January 12, 2012, Jamieson's relationship with Weaver waned. Jamieson did, however, continue to allow Weaver to drive her car on occasion. On January 24, 2012, Weaver was stopped and arrested for outstanding warrants while driving Jamieson's car. During this arrest, Weaver's black and silver handgun was found under the driver's seat. Additionally, bullets matching those loaded into the handgun were found in Weaver's backpack in the vehicle. Also found in the backpack were Weaver's school identification card and papers belonging to him.

After Weaver's arrest, Weaver called Jamieson in a recorded jail phone call and told her that when he was pulled over in her car and the police found his gun. Jamieson posted Weaver's bail, and Weaver was released from custody. After this incident, Jamieson's relationship with Weaver ended.

Jamieson began a relationship with White, becoming engaged on April 30, 2012. On May 2, 2012, White was arrested for the robbery of the Raymore Sonic. In an effort to deflect attention away from herself and White, Jamieson reported to the TIPS Hotline the names "Maurice Weaver" and "Emmanuel Black" in connection with the Raymore Sonic robbery. Later, she posted again saying that Weaver and "Pinky" were the perpetrators and Black was not involved.

In June of 2012, Jamieson was contacted by the Raymore Police for an interview. Jamieson told the police that she did not know White, that she did not know anything

4

about the robbery, and that she was not involved. However, she later admitted that she was involved in the robbery and implicated Weaver and White.

In July of 2012, Weaver was arrested in connection with the robbery. Weaver waived his right to a jury trial. Following a bench trial, the court found Weaver guilty of robbery in the first degree and armed criminal action. The trial court found Weaver to be a prior and persistent offender, due to his two prior convictions for armed criminal action. Weaver was sentenced to concurrent sentences of twenty-five years incarceration for robbery in the first degree and ten years incarceration for armed criminal action. Weaver now appeals.

## Standard of Review

Because both of Weaver's points of appeal challenge the sufficiency of the evidence to support his convictions, the standard of review is the same.

> When reviewing the sufficiency of evidence supporting a criminal conviction, the Court gives great deference to the trier of fact. Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. In applying this standard, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary.

*State v. Neal*, 328 S.W.3d 374, 377-78 (Mo. App. W.D. 2010). The same standard applied to jury trials applies in bench trials. *State v. Varnell*, 316 S.W.3d 510, 513 (Mo. App. W.D. 2010).

5

## Analysis

### I.

In Point One, Weaver argues that the trial court erred in convicting him of robbery because the State's main witness' testimony about the crime charged was so inherently contradictory as to be objectively unreasonable. Weaver contends that the uncorroborated statements offered from Jamieson were inconsistent and irreconcilable as to who she drove to the crime scene and who committed the robbery.

The elements of robbery in the first degree are derived from section 569.020, which provides:

> A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,
> (1) Causes serious physical injury to any person; or
> (2) Is armed with a deadly weapon; or
> (3) Uses or threatens the immediate use of a dangerous instrument against any person; or
> (4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

Regarding armed criminal action, section 571.015.1 states: "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action . . . ."

On appeal, Weaver does not dispute that there was sufficient evidence to prove the elements of robbery in the first degree and armed criminal action. Rather, Weaver *only* disputes whether there was sufficient evidence to prove that *he* was one of the robbers.

6

Weaver argues that the Corroboration Rule and/or the Destructive Contradictions Doctrine should be applied here because Jamieson's uncorroborated testimony was inconsistent and irreconcilable as to whom she drove to the crime scene and who committed the robbery. Even though both of these rules have been abolished by the Missouri Supreme Court, Weaver argues they should be resurrected and applied in this case.

Under the former Corroboration Rule, corroboration of a witness' testimony was required "if the witness's testimony [was] determined to be contradictory or if the appellate court's review of the evidence raise[d] some undetermined level of uncertainty regarding the evidentiary support for the conviction." *State v. Porter*, 439 S.W.3d 208, 211 (Mo. banc 2014). The Corroboration Rule was abolished by the Missouri Supreme Court in *State v. Porter* for two reasons. First, the Corroboration Rule required an appellate court to make credibility determinations, which went beyond the appropriate standard of review for challenges to the sufficiency of the evidence. *Id.* at 212. Second, the rule had historically only been applied to sex crimes due to two unsupportable assumptions: "(1) that the testimony of sex crime victims is inherently less credible than the testimony of other crime victims; and (2) that judges and juries are uniquely unable to make accurate factual determinations in sex crime cases." *Id.* The court completely abolished the rule in Missouri and held that claims regarding the sufficiency of evidence to support a conviction for a sex crime should be reviewed as any other claims alleging insufficient evidence. *Id.* at 212-213.

Similarly, Weaver also argues that this court should apply the Destructive Contradictions Doctrine. Like the Corroboration Rule, the Destructive Contradictions Doctrine permitted "an appellate court to disregard testimony that it determine[d] [was] inherently incredible, self-destructive or opposed to known physical facts with respect to an element of the crime." *Id.* at 213. The Destructive Contradictions Doctrine was not limited to sex crime cases, as was the Corroboration Rule. *Id.* However, like the Corroboration Rule, the Destructive Contradictions Doctrine was also abolished by *Porter* because "it too require[d] appellate courts to engage in credibility determinations that [were] properly left to judges and juries sitting as triers of fact." *Id.* at 213.[3]

This Court is bound by the decision of the Missouri Supreme Court in *Porter*, which abolished the Corroboration Rule and the Destructive Contradictions Doctrine, and we decline Weaver's invitation to revisit them, even if we had the authority to do so. *See Independence–Nat'l Educ. Ass'n v. Independence Sch. Dist.*, 162 S.W.3d 18, 21 (Mo. App. W.D. 2005) (this Court is "constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court"). Therefore, the real issue presented is whether there was sufficient evidence to support the trial court's finding that Weaver was the perpetrator of the underlying offenses for which he was convicted. *See Porter*, 439 S.W.3d at 213 (claims that testimony is too inconsistent to support a

---

[3] Even assuming that the Corroboration Rule and the Destructive Contradictions Doctrine were still in effect, they would be inapplicable here. The Corroboration Rule was "triggered *only by contradictions in the victim's trial testimony* and not by inconsistencies with the victim's out-of-court statements or the testimony of other witnesses." *State v. Gatewood*, 965 S.W.2d 852, 856 (Mo. App. W.D. 1998) (emphasis added). The same is true of the Destructive Contradictions Doctrine. *State v. Wright*, 998 S.W.2d 78, 81 (Mo. App. W.D. 1999). Weaver does not argue that Jamieson's trial testimony was internally contradictory but that statements she made to police and the TIPS Hotline prior to trial were contradictory with her trial testimony.

8

conviction will be reviewed according to the generally applicable standard of review alleging insufficient evidence to support a conviction).

Weaver argues that there is insufficient evidence to find that he was the perpetrator of the robbery because Jamieson's testimony lacks credibility due to contradictions in her varying identification of the perpetrators to police and in Jamieson's decision to return home when she knew she would encounter Weaver rather than fleeing after he threatened to kill her and her children. He argues that these contradictions make Jamieson unreliable and, therefore, make the State's evidence insufficient. Furthermore, Weaver argues that there is no evidence that he held the gun during the robbery because neither his fingerprints nor his DNA were on the black and silver gun found during his arrest.

In this case, the trial judge as the trier of fact, "may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances, and other testimony in the case." *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002). Additionally, "[t]he testimony of a single witness is sufficient to support a conviction even if the testimony of the witness is inconsistent." *State v. Bell*, 936 S.W.2d 204, 207 (Mo. App. W.D. 1996); *see also Porter*, 439 S.W.3d at 211 ("Generally, a witness's testimony is sufficient evidence to sustain a conviction, and the trier of fact is left to determine credibility issues"). For example, in *Porter*, the court found that there was sufficient evidence to support the defendant's convictions for statutory sodomy. 439 S.W.3d. at 214. Although the defendant argued that "there were inconsistencies in [the victim's] trial testimony and out-of-court statements" which damaged the victim's

credibility, the court determined that "the jury was in the best position to resolve [those] credibility issues." *Id.* at 213-14.

Here, Jamieson testified that on the day of the robbery Weaver asked her for gloves, bandannas, and toy guns. Jamieson later drove Weaver and White to the Raymore Sonic, dropping them off down the street from the restaurant with instructions to wait. Jamieson, however, fled when she heard police sirens. Additionally, Jamieson testified that after she declined to drive Weaver and White from the Belton Sonic to the Raymore Sonic, Weaver pointed his black and silver handgun at her and threatened her and her children. It is a reasonable inference from this evidence that Weaver was in possession of a handgun when he committed the robbery a short time later. Upon returning home, Weaver and White were counting and splitting money in her living room, and Weaver was angry that she had abandoned them at the Raymore Sonic. Weaver was later arrested with a black and silver handgun loaded with bullets matching the bullets in a backpack belonging to him, which Jamieson testified was the same gun used by Weaver to rob the Raymore Sonic. Weaver's counsel thoroughly cross examined Jamieson regarding the various statements that she had made pretrial.

The trial judge, as the trier of fact, was in the best position to resolve any inconsistencies in Jamieson's testimony. The trial judge clearly found Jamieson credible. There was sufficient evidence for a fact-finder to conclude that Weaver was the perpetrator of the underlying crime beyond a reasonable doubt. Point One is denied.

## II.

In Point Two, Weaver argues that the trial court erred in convicting him of robbery and armed criminal action because the evidence to support the convictions was insufficient. Weaver alleges that the State's proof of the elements of the offenses rested only on the uncorroborated testimony of Jamieson, whose previous statements were all in such dispute as to render the witness' testimony irreconcilable with the Weaver's guilt.

Once again Weaver only disputes whether there was sufficient evidence to prove that *he* was one of the robbers. For the reasons explained in Point One, we have already found that there was sufficient evidence before the trial court from which it could have found beyond a reasonable doubt that Weaver committed the crimes for which he was convicted. Point Two is denied.

### Conclusion

The judgment and sentence of the Circuit Court is affirmed.

_____
Gary D. Witt, Judge

All concur

11