In the
 Missouri Court of Appeals
 Western District
 STATE OF MISSOURI, )
 )
 Respondent, ) WD83687
 )
 v. ) OPINION FILED: November 23, 2021
 )
 JAMES PATRICK DODD, JR., )
 )
 Appellant. )

 Appeal from the Circuit Court of Jackson County, Missouri
 The Honorable Justine E. Del Muro, Judge

Before Division Three: Lisa White Hardwick, Presiding Judge, Gary D. Witt, Judge and
 Edward R. Ardini, Jr., Judge

 James Dodd ("Dodd") appeals from the judgment of the Circuit Court of Jackson

County, Missouri ("trial court") convicting Dodd of two counts of first-degree child

molestation, section 566.067;1 one count of first-degree statutory sodomy, section 566.062;

one count of attempted first-degree statutory sodomy, section 566.062; one count of

second-degree statutory rape, section 566.034; and three counts of second-degree statutory

sodomy, section 566.064. Dodd raises two issues on appeal: (1) the evidence presented at

 1
 All statutory references are to R.S.Mo. 2016, as currently updated by supplement, unless otherwise noted.
trial was insufficient to support a conviction on counts I-VII; and (2) the offenses against

the two separate victims were improperly joined in the indictment and were not severed.

Finding no error, we affirm.

 Factual and Procedural Background2

 This case involves the sexual molestation and rape of two separate child victims:

K.J.K. and B.B.3 The sexual molestation of the two victims occurred during different time

periods, and the two victims do not know each other.

 K.J.K. is the daughter of "Mother" and the niece of "Aunt." Aunt is Dodd's ex-

girlfriend and is the mother of Dodd's twin boys, who were born in 2005. During the

relevant time periods, Dodd and Aunt did not share a residence, but Dodd frequently visited

Aunt's home to spend time with the twin boys while they were growing up. K.J.K. also

visited Aunt's house frequently with Mother during this time frame.

 The charges against Dodd regarding K.J.K. arose from three incidents in 2009, when

K.J.K. was six or seven years old. Dodd sexually molested K.J.K. at Aunt's house on three

separate occasions. The first incident occurred while K.J.K., Dodd, and K.J.K.'s male

cousin, D.K., were watching television together in the living room. When D.K. went to

the restroom, Dodd lifted K.J.K. onto his lap, unbuttoned her pants, and put his hands down

the front of her pants. Dodd touched and rubbed K.J.K.'s vagina, skin to skin. Dodd also

placed his hands up K.J.K.'s shirt to feel her breasts. While being held on Dodd's lap,

 2
 We consider the testimony in a light most favorable to the verdict, and contrary evidence and inferences
are disregarded. State v. Rutter, 93 S.W.3d 714, 720 (Mo. banc 2002).
 3
 We have used the victims' initials to protect their identity pursuant to section 595.226.1.

 2
K.J.K. could feel Dodd's erect penis through his pants. After a couple of minutes, D.K.

came out of the restroom, and Dodd took K.J.K. off his lap without buttoning her pants.

 The second incident occurred just weeks later on the first floor of Aunt's house.

K.J.K. and two other children were setting up a video game while Dodd sat on a reclined

exercise chair. When the children's backs were toward him, Dodd pulled K.J.K. to him.

He unzipped his pants and pulled them down slightly, then he pulled K.J.K.'s pants down

slightly and placed K.J.K. onto his lap. He moved K.J.K. around on his penis so that his

penis touched her vagina without penetration. K.J.K. felt a liquid "shoot up" in between

her thighs, on her vagina, and on her buttocks. Dodd then pulled K.J.K.'s pants back up

and pulled her off his lap.

 The final charged incident between Dodd and K.J.K. occurred at Aunt's home in the

living room. Mother dropped K.J.K. off at Aunt's house for the evening while she went to

night school. Dodd was the only person present at Aunt's home that evening. Dodd sat on

the couch playing a video game, and K.J.K. asked him if she could eat a Nutter Butter

snack. Dodd told K.J.K. that she could not have a snack unless she "did something" first.

K.J.K. asked what she had to do, and Dodd pulled out his penis and started rubbing it.

Dodd asked K.J.K. if she was going to "do it," but she shook her head "no." Dodd grabbed

K.J.K.'s hand and put it on his penis. He placed his hand on top of her hand and began

moving the two hands together up and down.

 During eighth grade, K.J.K. had become rebellious and started acting out at school.

Mother had a conversation with her about her behavior problems, and during the

conversation K.J.K. began crying and told Mother about the sexual molestation by Dodd.

 3
Mother called the police to report the abuse. K.J.K. was then interviewed by law

enforcement, the Children's Division, and a forensic interviewer regarding the molestation.

 Dodd's and Aunt's relationship ended around 2009 or 2010. Dodd then began dating

"Wife," whom he later married. B.B. is Wife's cousin, and B.B. met Dodd at Wife's house

when she was thirteen or fourteen years old. Dodd and Wife have four children together,

and B.B. frequently visited their home to babysit the children and hang out with Wife and

Dodd. B.B. initially enjoyed spending time with Dodd, and he did not make her feel

uncomfortable. However, after she turned fifteen years old, Dodd began touching B.B.

inappropriately. He tickled her and rubbed up against her body whenever he walked passed

her. Ultimately, Dodd's touching led to inappropriate actions and sexual abuse on three

separate occasions in 2015.

 The first incident occurred in Wife's basement. While Wife and the children were

upstairs, Dodd and B.B. were alone smoking marijuana in the basement. Dodd wanted to

show B.B. a smoking trick; he blew smoke into B.B.'s mouth for her to inhale. When he

blew the smoke, he kissed her on the lips. B.B. did not tell anyone about the incident

because she believed it was a one-time incident related to the smoking trick.

 The second incident also occurred at Wife's home. After Wife and the other children

went to bed, Dodd invited B.B. to the basement to smoke marijuana again. Dodd went

down the stairs first, and B.B. followed. Dodd stopped halfway down the stairs and sat

down on a step to prevent B.B. from going any farther. Dodd pulled B.B. onto his lap and

stuck his hand up B.B.'s shirt to feel her breasts. Dodd and B.B. then went down the stairs

to the basement where they began smoking marijuana. Dodd made B.B. smoke more than

 4
she wanted, and once she was "past her limit," he showed B.B. a pornographic video on

his phone. He then asked to perform oral sex on B.B. When B.B. declined, Dodd sat down

next to her on an ottoman and placed her hand on his jeans and told her to "touch it." B.B.

pulled her hand away multiple times, so eventually Dodd pulled his penis out of his pants

and forced B.B.'s head down toward it until her mouth touched his penis. She performed

oral sex on him, and then he took her pants and underwear off while she lay on the ottoman

so that he could perform oral sex on her. Then, he put his penis in her vagina and raped

her until he ejaculated on her buttocks. Dodd wiped his ejaculate off of her with a t-shirt

he found in the basement. The next day, she was sore in her vaginal area.

 The final incident between B.B. and Dodd occurred one month later. B.B. continued

to visit Wife because she believed that if she stopped going to Wife's house, her parents

would become suspicious that something occurred. Believing that Dodd would once again

abuse her, B.B. stole a condom from a gas station before going to their house out of fear of

becoming pregnant. When she arrived at their home, Wife had to leave to attend a meeting

with a wedding planner in preparation for her wedding with Dodd, and the other children

were upstairs. Dodd ordered B.B. to go to the basement. Once in the basement, B.B. gave

Dodd the condom and asked him to use it because by the way he ordered her to go to the

basement she knew what he was going to do to her. Dodd made B.B. bend over the

ottoman, and he raped her from behind. He ejaculated on her buttocks and wiped it up with

a t-shirt.

 One week after the final sexual incident between B.B. and Dodd, B.B. and Wife

were speaking on the phone about church, God, and forgiveness. Because B.B. believed

 5
she was at fault and needed to be forgiven, she told Wife about the three incidents involving

Dodd. Wife informed B.B.'s parents about Dodd's crimes, who then took B.B. to the police

station. B.B. spoke to law enforcement, a forensic interviewer, and a doctor about the

incidents with Dodd.

 Dodd was convicted on Counts I-VII,4 and the court sentenced him according to the

jury's recommendations, with the sentences for the crimes against K.J.K. to run

consecutively to the sentences for the crimes against B.B., for a total sentence of thirty-

seven years. This appeal follows.

 Sufficiency of the Evidence

 Standard of Review

 Dodd's first point argues the trial court erred by overruling his motion for acquittal

at the close of evidence because the State's evidence was "uncorroborated, contradictory

and/or inherently incredible." "The review of a trial court's denial of a motion for judgment

of acquittal is the same as reviewing a claim that there was insufficient evidence to convict

the defendant of the charged offense." State v. Bass, 81 S.W.3d 595, 614 (Mo. App. W.D.

2002).

 When reviewing the sufficiency of the evidence supporting a criminal
 conviction, the Court gives great deference to the trier of fact. Appellate
 review is limited to a determination of whether there is sufficient evidence
 from which a reasonable juror might have found the defendant guilty beyond
 a reasonable doubt. In applying this standard, the Court accepts as true all of
 the evidence favorable to the state, including all favorable inferences drawn
 from the evidence and disregards all evidence and inferences to the contrary.

 4
 One count of second-degree statutory sodomy was dismissed by the State at trial prior to submission.

 6
State v. Weaver, 481 S.W.3d 927, 930 (Mo. App. W.D. 2016) (internal quotations omitted).

 Analysis

 Dodd argues, in a single point relied on, that the trial court erred in overruling his

motion for acquittal at the close of evidence as to all seven counts relating to both victims.

In challenging sufficiency of the evidence to support the convictions for all seven charges,

involving multiple victims which occurred at separate times in a single point, Dodd's first

point is multifarious. "Multiple claims of error in one point relied on renders the point

multifarious and as such is a violation of Rule 84.04, made applicable to briefs in criminal

appeals by Rule 30.06(c)." State v. Leonard, 490 S.W.3d 730, 736 (Mo. App. W.D. 2016)

(internal quotation omitted).

 Here, Dodd does not argue trial court error in regard to a specific conviction, or that

the failure to sufficiently prove a single element that is common to all seven charges

requires reversal; rather, he argues the trial court erred by denying his motion for judgment

of acquittal as to all seven counts by pointing to inconsistencies between various statements

each separate victim gave at different times and pointing to evidence which he argues

should have been found more credible. "Generally, multifarious points preserve nothing

for appellate review and are ordinarily subject to dismissal." Id. (internal quotation

omitted). Dismissal of Dodd's appeal, therefore, is within our discretion. However,

because "we prefer to decide cases on the merits where an appellant's argument is readily

understandable--as is the case here" id. at 736-37, we exercise our discretion to review the

case on the merits.

 7
 Counts I-IV pertain to Dodd's molestation of K.J.K. The convictions of Counts I-

IV include two counts of child molestation in the first degree, one count of attempted

statutory sodomy in the first degree, and one count of statutory sodomy.

 On appeal, Dodd does not argue that the State failed to adduce evidence establishing

facts supporting the submission of Counts I-IV, rather Dodd argues "[t]here was significant

evidence at trial to contradict and refute the testimony of K.J.K. and other State's evidence."

Dodd points to testimony given by defense witnesses that question Dodd's presence at

Aunt's house during 2009, where the molestation of K.J.K. occurred. For example, Q.V.,

a friend of Dodd, testified that Dodd did not have contact with Aunt in 2009. Other defense

witnesses testified; 1) that Dodd could not have traveled to Aunt's house because Dodd did

not have a car; 2) Aunt had an order of protection against Dodd that would have prevented

Dodd from visiting Aunt's home; and 3) that they never saw Dodd at Aunt's house.

 Dodd also argues K.J.K.'s testimony should be found not to be credible based on

inconsistencies between her prior statements to law enforcement compared to her trial

testimony. Officer Pugh testified that K.J.K. only mentioned two acts of molestation, not

three. Officer Pugh also testified K.J.K. told him she was fully clothed during the second

act of molestation, but K.J.K.'s trial testimony was that Dodd pulled her pants down slightly

to place his penis against her vagina. During the forensic interview, K.J.K. did not mention

Dodd placed his hands down her pants during the first act of molestation; however, at trial,

K.J.K. testified Dodd did put his hands down her pants during the first incident. Dodd also

argues K.J.K.'s testimony is not credible due to the time lapse between the crimes (2009)

and the reporting of the crimes (2016).

 8
 Counts V-VII pertain to B.B.'s sexual abuse. Counts V-VII include two counts of

statutory sodomy in the second degree and one count of statutory rape in the second degree.

 Dodd argues the State's evidence was insufficient to convict of the charged offenses

because the defense offered testimony contradicting the State's evidence. Dodd's witnesses

testified that in 2015, B.B. came to Wife's and Dodd's house only a few times and never

stayed long enough or had the opportunity to be alone with Dodd. Wife testified that even

if B.B. were alone with Dodd, the walls in their home were so thin that she would have

been able to hear anything happening downstairs and would have been able to smell

marijuana. Wife further testified there was no furniture in the basement, even though B.B.

testified that Dodd raped her on the basement furniture. Finally, Dodd himself testified he

was never alone with B.B.

 Dodd's arguments fail as a matter of law. Dodd essentially asks this Court to either

reweigh the credibility of the evidence, which we cannot do, or to apply the Corroboration

Rule and Destructive Contradictions Doctrine, both of which the Missouri Supreme Court

abolished in State v. Porter, 439 S.W.3d 208, 211, 213 (Mo. banc 2014). While we

acknowledge that Dodd never refers to the Corroboration Rule and Destructive

Contradictions Doctrine by name, the arguments made in support of the Point Relied On

are directly based on these two standards.

 The Corroboration Rule and Destructive Contradictions Doctrine were judicially

created standards of evidentiary review that were only applicable to sexual offenses.

"Under the former Corroboration Rule, corroboration of a witness'[s] testimony was

required if the witness's testimony [was] determined to be contradictory or if the appellate

 9
court's review of the evidence raise[d] some undetermined level of uncertainty regarding

the evidentiary support for the conviction." Weaver, 481 S.W.3d at 931 (internal

quotations omitted). "The court completely abolished the rule in Missouri and held that

claims regarding the sufficiency of evidence to support a conviction for a sex crime should

be reviewed as any other claims alleging insufficient evidence." Id. Similarly, the

Destructive Contradictions Doctrine "permitted an appellate court to disregard testimony

that it determine[d was] inherently incredible, self-destructive[,] or opposed to known

physical facts with respect to an element of the crime." Id. (internal quotations omitted).

Porter also abolished this doctrine because "it too require[d] appellate courts to engage in

credibility determinations that [were] properly left to judges and juries sitting as triers of

fact." 439 S.W.3d at 213. For these reasons, we decline Dodd's request that we apply the

now abolished Corroboration Rule and Destructive Contradictions Doctrine and

independently determine that the State's evidence was "uncorroborated, contradictory,

and/or inherently incredible."

 As to the suggestion that we should reweigh the evidence, "[w]e do not reweigh the

evidence but, instead, accept as true all evidence and inferences supporting guilt and ignore

all contrary evidence and inferences." State v. Garcia, 587 S.W.3d 688, 692 (Mo. App.

W.D. 2019). The trier of fact may believe all, some, or none of the testimony of a witness

when considered with the facts, circumstances, and other testimony in the case. State v.

Crawford, 68 S.W.3d 406, 408 (Mo. banc 2002). "The testimony of a single witness is

sufficient to support a conviction even if the testimony of the witness is inconsistent." State

v. Bell, 936 S.W.2d 204, 207 (Mo. App. W.D. 1996). The jury is in the best position to

 10
resolve credibility issues, such as inconsistencies in the victim's trial testimony and out-of-

court statements. Porter, 439 S.W.3d at 213-14. And the Court will not engage in

credibility determinations that are properly left to the trier of fact. Id. at 214.

 Here, the evidence supports a conviction of each of the charged offenses. Both

K.J.K. and B.B. testified regarding Dodd's actions. Both victims detailed the three

incidents each experienced in which Dodd either molested or raped them. Their testimony

alone is sufficient evidence to convict if the jury believed their testimony and if the

elements of the offenses were satisfied. But Dodd does not argue the elements of the

offenses were not satisfied; rather, he argues that both the victims' conflicting statements

and his own witnesses' testimonies render the victims' testimonies incredible.

 The inconsistencies Dodd points to on appeal were thoroughly raised by Dodd's

counsel on cross-examination and highlighted in his argument to the jury. The jury was

fully aware of the alleged contradictions but clearly found the testimony of K.J.K. and B.B.

credible. Dodd also presented evidence that contradicted the victims' testimony regarding

Dodd's presence at Aunt's house in 2009 and Dodd's opportunities to be alone with B.B. in

2015. The jury was also aware of the seven-year time lapse between K.J.K.'s abuse and

her reporting it. But the jury as the trier of fact remains in the best position to weigh the

credibility of the witnesses and determine if the State has proven each element of each

charged offense beyond a reasonable doubt. This Court will not second guess the

credibility determinations of the jury.

 Dodd's point one is denied.

 Joinder and Severance

 11
 Standard of Review

 Dodd's second point argues the offenses against K.J.K. and the offenses against B.B.

were improperly joined in the charging instrument and should have been severed, resulting

in substantial prejudice to Dodd. Appellate review of claims of improper joinder and

failure to sever, if the issue is properly preserved, involves a two step-analysis; first, the

appellate court must determine whether joinder was proper as a matter of law, and if not,

then prejudice is presumed and severance is mandatory, but if joinder was proper, the

appellate court then must determine whether the court abused its discretion in denying the

defendant's motion to sever. State v. Holliday, 231 S.W.3d 287, 292 (Mo. App. W.D.

2007).

 Analysis

 Dodd argues joinder was improper as a matter of law and that the trial court abused

its discretion by denying severance. Joinder and severance are separate and distinct issues.

State v. Collins, 527 S.W.3d 176, 180 n.4 (Mo. App. W.D. 2017). "Joinder" addresses

what crimes can be charged in a single proceeding, while "severance" assumes that joinder

is proper and gives the trial court discretion to determine whether substantial prejudice

would result if the charges were tried together. State v. Hyman, 37 S.W.3d 384, 393 (Mo.

App. W.D. 2001).

 Joinder of two or more offenses within a single charging document is proper if the

offenses charged are (1) of the same or similar character; (2) based on the same act or

transaction; (3) based on two or more acts or transactions connected together; or (4)

constitute parts of a common scheme or plan. Section 545.140.2; Rule 23.05. Liberal

 12
joinder of offenses is favored to achieve judicial economy. State v. Davis, 825 S.W.2d

948, 953 (Mo. App. E.D. 1992).

 Whenever two or more offenses are jointly charged in an indictment or information,

the court shall order both or all offenses to be tried together. Section 545.885. If it appears

that a defendant or the state is substantially prejudiced by a joinder of the offenses for trial,

upon a written motion of the defendant or the state and upon a particularized showing of

substantial prejudice, the court may grant a severance of offenses and provide whatever

relief justice requires. Id.; Rule 24.07.

 As an initial matter, we must first address whether Dodd preserved the issue of

improper joinder and severance for appeal. If a defendant fails to object to the joinder of

offenses before trial, he waives the right to obligate the State to "elect among the counts"

as to which counts it will try. State v. Shubert, 747 S.W.2d 165, 168 (Mo. App. W.D.

1988). Further, an "appellant cannot claim error with respect to action by the court on any

motion or request directed to the severance of [the offenses] because he filed no motion

and therefore waived the error." Id. at 169. "Any contention [an] appellant may make on

this point is therefore reduced to a contention that the trial judge should have acted sua

sponte to afford appellant separate trials." Id. (emphasis added). And because Section

545.885 requires that offenses charged together in the indictment be tried together unless

a party files a motion for severance, a "court which undertook sua sponte to sever jointly

charged offenses would be in direct violation of the statute." Id. (emphasis added).

Therefore, "where multiple counts in an information [or indictment] charge two or more

 13
offenses and no motion for severance is filed, the court has no alternative but must try all

of the offenses to one jury in a single trial." Id.

 Here, the record lacks any indication that Dodd moved to sever the offenses or

objected to the single trial of the multiple offenses which were charged together in the

indictment. Dodd did not file any motion arguing improper joinder, nor did he move the

trial court to sever the offenses, regardless of whether they were properly joined or not.

Even in his appellate brief, Dodd does not reference any pretrial motion arguing for

severance or improper joinder.

 Dodd's only pretrial argument regarding the indictment was his Motion to Dismiss

Counts II and IV because the counts were "multiplicitous." Dodd argued the counts

contained the exact same language without additional facts or details to distinguish the

counts. But Dodd's Motion to Dismiss Counts II and IV was not a motion to sever. Dodd's

Motion to Dismiss made no mention of improper joinder as a matter of law, nor did it argue

for severance due to substantial prejudice of joinder. Moreover, Counts I-IV pertained to

K.J.K.'s abuse, and Counts V-VII pertained to B.B.'s abuse, so Dodd's Motion to Dismiss

Counts II and IV could not have been a motion to sever K.J.K.'s offenses from B.B.'s

offenses. See id. at 167 ("There was no pre-trial objection made to the composition of the

information, no motion to sever . . . was filed and the new trial motion did not mention the

present claim of error."). Accordingly, Dodd did not properly preserve his claim of

improper joinder, and the trial court did not err in failing to sever the charges sua sponte

because it was prohibited by Section 585.885 from severing the offenses absent a motion

by the defendant.

 14
 Even if Dodd had properly preserved his claim by filing a motion to sever, the trial

court would not have abused its discretion by denying severance of the offenses. If

properly preserved, the appellate court must first determine if joinder was proper as a

matter of law. The State only argues one basis for joinder; that is, joinder was proper

because the offenses were of the same or similar character. See Section 545.140.2.

 The use of similar or comparable tactics is sufficient to show that the offenses are

of the same or similar character for purposes of joinder. Holliday, 231 S.W.3d at 293.

"[T]he manner in which the crimes were committed, or the connection otherwise between

the offenses, must be so similar or so related that the manner or the relationship is pertinent

evidence that the same person committed all the charged offenses." Id. The tactics need

only resemble or correspond with one another; they do not need to be identical. Id.

Nonexclusive factors that show similar tactics include commission of the same type of

offenses, victims of the same sex and age group, offenses at the same location, and offenses

closely related in time. Id.

 Dodd's tactics of abuse against K.J.K. and B.B. were of the same or similar

character. Both victims were underage girls. Dodd had penis-to-vagina contact with both

victims. Dodd first initiated physical contact with each victim by touching their breasts

and genitals before escalating to genital-genital contact. Dodd used his relationship with

the victims' relatives to secure alone time with them. Each incident occurred in the house

of the victims' relatives. Although a time lapse occurred between the victims' abuse, the

character of the crimes was sufficiently similar to satisfy the joinder requirements of

Section 545.140.2.

 15
 After finding joinder to be proper, appellate courts must next determine whether the

court abused its discretion in denying the defendant's motion to sever. Id. at 292. Dodd's

argument on appeal must fail because he did not file a written motion to sever as required

by the statute. Further, Dodd fails to set forth how the failure to sever resulted in substantial

prejudice. Dodd simply states, without support, "The Trial Court placed [Dodd] in an

untenable position having to defend against two separate victims with each victim alleging

multiple counts or offenses against [Dodd]." Even if his argument were properly

preserved, Dodd did not explain how defending against multiple victims led to substantial

prejudice. Accordingly, even if Dodd had properly preserved the issue for appeal, he failed

to file a motion to sever as required and failed to make a particularized showing of

substantial prejudice requiring reversal for the failure to severe the offenses.

 Dodd's point two is denied.

 Conclusion

 For all of the above-stated reasons, we affirm the judgment of the trial court.

 __________________________________
 Gary D. Witt, Judge

All concur

 16