

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD85819** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **MARCH 19, 2024** |
| **JACOB-CHARLES S. WESTON,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
The Honorable William B. Collins, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Edward R. Ardini, Jr.,
Judge and W. Page Bellamy, Special Judge

Jacob Charles Weston ("Weston") appeals a judgment of the Circuit Court of Cass

County, Missouri ("trial court"), convicting him, after a jury trial, of four counts of

statutory sodomy in the first degree against two separate victims, section 566.062.[1]  For

Counts I-III, Weston was sentenced to fifteen years' imprisonment on each count, and ten

years' imprisonment for Count V, with all sentences ordered to be served consecutively to

each other for a total sentence of 55 years.  Weston was acquitted on Count IV, which

charged him with the offense of child molestation in the first degree.  Weston raises four

---

[1] All statutory references are to Missouri Revised Statutes (2000), as updated through
2016, unless otherwise noted.

points on appeal: Point I, the trial court erred in overruling Weston's motion for judgment of acquittal because the State failed to prove each element of the four sodomy counts; Point II, the trial court erred in overruling Weston's motion for new trial because the State's cross examination of him was argumentative and highly prejudicial; Point III, the trial court erred in overruling Weston's motion for new trial because the State improperly argued past and future dangerousness in closing argument, which prejudiced Weston; and Point IV, the trial court erred in overruling Weston's motion for new trial because the State's errors were cumulatively sufficient to violate Weston's rights to a fair trial. Finding no error, we affirm the judgment and sentence of the trial court.

## Factual and Procedural Background[2]

A.W. lived in Missouri with her maternal grandmother, as well as her mother ("Mother"), and her mother's brother, Weston, from 2016 through 2017 when the offenses against her occurred. A.W. was between four and five years old. While A.W. stayed with Mother, there were times when Weston was alone with A.W.

During this time period, A.W.'s Mother and father ("Father") were not married and had no formal custody arrangement, but there was a verbal, mutual agreement between them.[3] For the summer of 2017, Father and Mother agreed that Father would come to

---

[2] "We consider the testimony in a light most favorable to the verdict, and contrary evidence and inferences are disregarded." *State v. Haneline*, 670 S.W.3d 14, 20 n.3 (Mo. App. W.D. 2023) (internal citation omitted).

[3] In April 2017, there was a court order establishing paternity finding Father to be the biological father of A.W. and establishing child support. Prior to the summer of 2017, there was no litigation regarding custody between Mother and Father. After A.W.'s disclosure, Father filed a custody case in Texas because he was worried about A.W. going back to Missouri, as he was fearful Weston would be around her. In 2018, Mother filed a custody case in Missouri seeking

Missouri to get A.W. and bring her back to his home in Texas. During Father's parenting time, A.W. saw Father changing his infant son's diaper. A.W. pointed to the infant's private area and asked what it was. Father stated the infant son, "has a wiener" and A.W. replied, "Like my Uncle [Weston]." Father asked A.W. why she would say that and A.W. disclosed she saw Weston's penis. At the time of the disclosure A.W. was five years old. Father called Mother to tell her what A.W. said. Following that conversation Father called the Division of Family Services in Texas, and Mother called the Children's Division in Missouri to make reports of A.W.'s disclosure. The next day, Father took A.W. to the Alliance for Children in Fort Worth, Texas, for a videotaped forensic interview. During the interview, A.W. said Weston made her "touch his no no" and he wanted A.W. to "lick it" and if she did, Weston would then give her a treat.[4] The forensic interviewer asked A.W. clarifying questions and A.W. confirmed Weston wanted her to "lick" his penis with her tongue, and put it inside her mouth. A.W. also disclosed that Weston told her he was going to "lick" A.W.'s "no-no" and that he did. A.W. told the interviewer that after both incidents, Weston told her to keep it a secret.

After the forensic interview, A.W. was taken to Cook Children's Hospital in Fort Worth, Texas, for a sexual assault examination. During the exam, A.W. told the forensic nurse that Weston had touched her and she pointed to her genitals, breasts, and buttocks. A.W. also indicated Weston touched her vagina with his finger. A.W. told the nurse she

---

to have A.W. return to Missouri to live with her. In May 2022, Father voluntarily brought A.W. back to Missouri to live with Mother.

[4] Throughout A.W.'s forensic interview, she described male and female genitalia as the "no no" spot.

had to touch Weston and demonstrated how she had to make a fist and move it up and down, "Like this." The forensic nurse did not find any physical signs of sexual abuse.

In December 2017, a detective with the Belton Police Department began to review A.W.'s forensic interview and her medical records as part of an investigation into her abuse. While investigating A.W.'s allegations of abuse, an additional investigation was started involving another potential victim, N.C.

Between 2010 and 2011, N.C.'s mother was dating Mother's other brother ("Boyfriend"). During that time period, Boyfriend lived in Cass County, Missouri, and hosted a family gathering where both N.C. and Weston were present. At the time of the family gathering, N.C. was roughly four years old. During the event, Boyfriend went downstairs to find Weston and saw Weston and N.C. under a blanket. N.C. quickly popped out from under the blanket, near Weston's knees. Both N.C. and Weston were fully clothed. Boyfriend was concerned at what he saw, and informed N.C.'s mother. After finding them, Boyfriend asked N.C. if anything happened between her and Weston, and she said no. N.C.'s mother also asked N.C. if anything happened, to which N.C. replied no.

In 2020, Mother contacted N.C.'s mother and told her about the incident between A.W. and Weston. Mother also spoke with N.C.'s mother about the situation that happened with N.C. and Weston at the family gathering nearly ten years prior. N.C.'s mother was then contacted by the detective, and she spoke with him about the incident with N.C. and Weston. Subsequently, N.C.'s mother asked N.C., who was then fifteen years old, if anything happened to her at the family gathering at Boyfriend's place. When

4

asked, N.C. closed down and did not respond. Nearly a week later, N.C.'s mother asked again and N.C. said Weston touched her "private parts" over her clothing.

After N.C.'s disclosure to her mother, N.C. was taken to the Child Protection Center in Kansas City, Missouri for a videotaped forensic interview. During the interview N.C. said while she was at Boyfriend's house, Weston touched her "lower part" on the skin with his hand.[5]

On August 26, 2021, Weston was indicted on five counts. Counts I, II, and III charged that Weston committed the offense of statutory sodomy in the first degree against A.W. Count V charged that Weston committed the offense of statutory sodomy in the first degree against N.C. Count IV charged that Weston committed the offense of child molestation in the first degree against A.W.

The jury trial began on August 29, 2022. A.W. testified at trial. A.W. testified she did not remember telling Father that something happened with Weston. A.W. said Weston never touched her, but that Weston made A.W. touch him when she was alone with him in Weston's room. A.W. testified Weston made her "lick his bad part" in order for her to get candy. A.W. stated she touched Weston's "bad spot" with her tongue, but she could not remember what position she was in when it happened. A.W. did not remember talking to the forensic interviewer and nurse about Weston touching her. When asked if she was telling the truth during the forensic interview, A.W. stated she "said wrong" and that she "probably just didn't understand." A.W. clarified that Weston

---

[5] N.C. referred to her vagina as the "lower part."

made A.W. put her tongue on his "bad spot" twice in the same day, but A.W. stated she could not do it the second time.

N.C. also testified at trial. N.C. testified about a time between 2010 and 2011 where she was at Boyfriend's house. N.C. stated she was laying down and Weston came in at one point. Weston and N.C. had gotten under the covers and Weston began touching N.C.'s vaginal area, under her clothes. N.C. did not remember Boyfriend coming downstairs during the incident, and she did not remember Boyfriend asking her if anything happened. N.C. never told anyone about the incident until her mother asked her about it in 2020. N.C. stated she originally told her mother that Weston touched her over the clothes and not under the clothes because she "didn't want [her mother] to be scared." N.C. testified she heard about an incident involving A.W. and Weston.

At the close of the State's evidence, Weston made an oral motion for judgment of acquittal based upon insufficiency of the evidence, which the trial court denied. At the close of all of the evidence, Weston renewed his motion for acquittal, which the trial court denied. The jury found Weston guilty on Counts I, II, III, and V, and not guilty on Count IV. Weston waived jury sentencing prior to trial. At the sentencing hearing, Weston filed a motion for new trial, which was denied. The trial court sentenced Weston to fifteen years' imprisonment for Counts I-III, and ten years' imprisonment for Count V, with each count to run consecutively for a total sentence of 55 years. This appeal follows.

**Sufficiency of the Evidence**

**Standard of Review**

In Point I, Weston claims the trial court erred in overruling his motion for judgment of acquittal because the State failed to prove each element of the four sodomy counts because the evidence produced at trial was "legally and substantially inconsistent" to support each charged count, violating Weston's rights to due process and a fair trial. "The review of a trial court's denial of a motion for judgment of acquittal is the same as reviewing a claim that there was insufficient evidence to convict the defendant of the charged offense." *State v. Dodd*, 637 S.W.3d 659, 666 (Mo. App. W.D. 2021). On review, we are limited to a determination of "whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Zetina-Torres*, 482 S.W.3d 801, 806 (Mo. banc 2016) (internal citation omitted). This Court will not re-weigh the evidence presented at trial; rather, "we accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore all contrary evidence and inferences." *State v. Gehring*, 599 S.W.3d 526, 529 (Mo. App. W.D. 2020) (internal citation and quotation omitted).

**Analysis**

We begin by noting Weston's first point on appeal is multifarious, violating Rule 84.04.[6] Weston challenges the sufficiency of the evidence to support each of his four convictions committed against two different victims at different times. "Multiple claims of error in one point relied on renders the point multifarious and as such is a violation of Rule 84.04, made applicable to briefs in criminal appeals by Rule 30.06(c)." *State v. Leonard*, 490 S.W.3d 730, 736 (Mo. App. W.D. 2016) (internal citation omitted). Multifarious points generally, "preserve nothing for appellate review and are ordinarily subject to dismissal." *State v. Putfark*, 651 S.W.3d 869, 879 (Mo. App. W.D. 2022) (internal citation omitted). Despite this violation, we exercise our discretion to review Point I on the merits as Weston's argument is readily understandable. *See State v. Glaze*, 611 S.W.3d 789, 794 n.6 (Mo. App. W.D. 2020).

As for Counts I-III Weston alleges the State: failed to prove Weston had A.W. place her mouth on Weston's penis, Count I; failed to prove Weston placed his mouth on A.W.'s vagina, Count II; and failed to prove that Weston had A.W. touch Weston's penis with her hand, Count III. Weston points to inconsistencies between A.W.'s initial disclosure to her father, her disclosures during the sexual assault exam, disclosures in her forensic interview, and her subsequent trial testimony. Weston claims A.W.'s disclosures were grossly inconsistent and contradictory over time. Weston argued before the jury and argues now that A.W.'s allegations stem from a custody battle between Father and

---

[6] All Rule references are to the Missouri Supreme Court Rules (2023), unless otherwise noted.

Mother, noting the initial disclosures were made while A.W. was with Father and the story changed dramatically "to not much of anything happened other than one alleged incident" once A.W. was with Mother.

As for Count V, Weston argues the State failed to prove Weston touched N.C.'s vagina with his hand. Weston argues the evidence concerning N.C. was grossly inconsistent and contradictory. Weston points to how N.C. denied that anything happened immediately after the alleged incident and that the incident was only brought up again when Mother told N.C.'s mother about what happened to A.W. Further, Weston claims N.C. made a disclosure only after repeated questioning, and thereafter her story changed from Weston touching her vagina over her clothes to under her clothes. Finally, Weston points to N.C.'s disclosure occurring nearly ten years after the incident that occurred when she was only four years old.

Weston is essentially asking this Court to re-weigh the evidence presented at trial, which we cannot do under our standard of review. *See Gehring*, 599 S.W.3d at 530. Weston argues the lack of physical evidence, combined with the "wildly shifting statements by the two alleged victims . . . would necessarily lead any reasonable juror to conclude the State had not proven its case on any of the charged and convicted counts."[7] We disagree.

---

[7] Weston asserts he is not asking this Court to apply the Corroboration Rule and/or the Destructive Contradictions Doctrine. Weston's argument, however, suggests this Court do exactly that. Essentially Weston is asserting that because the victims' testimonies are so inconsistent, and they cannot be corroborated due to lack of physical evidence, the judgment cannot stand. Our Supreme Court has abolished both rules, and "Missouri law long has

It is well established that the "testimony of a single witness is sufficient to support a conviction even if the testimony of the witness is inconsistent." *See Dodd*, 637 S.W.3d at 668 (internal quotation omitted). "As the trier of fact, the jury is the sole arbiter of witness credibility, and it is free to believe or disbelieve all, part, or none of any witness's testimony." *State v. Ferguson*, 568 S.W.3d 533, 540 (Mo. App. E.D. 2019). Further, "the trier of fact is generally in the best position to resolve inconsistent testimony by the child victim of a sex crime." *State v. Porter*, 439 S.W.3d 208, 214 (Mo. banc 2014).

Here, the evidence supports the convictions of each of the charged offenses. As for Count I, the jury found Weston had A.W. place her mouth on his penis. At trial, Father and forensic interviewer testified that A.W. stated Weston made her "lick" his penis. A.W.'s videotaped interview with these disclosures was admitted at trial. Further, A.W. testified at trial that Weston made her "lick his bad part."

As for Count II, the jury found that Weston placed his mouth on A.W.'s vagina. During the forensic interview, A.W. told the interviewer that Weston told A.W. he was going to "lick" her "no-no" and that he did.

As for Count III, the jury found Weston had A.W. place her hand on his penis. At trial, the forensic nurse testified that during A.W.'s sexual assault exam, A.W. disclosed that Weston made her touch his penis and A.W. demonstrated the movement by moving her fist up and down.

---

recognized that [trial] judges and juries are in a superior position to resolve factual disputes." *See State v. Porter*, 439 S.W.3d 208, 211-13 (Mo. banc 2014).

10

Finally, for Count V, the jury found Weston touched N.C.'s vagina with his hand. At trial, N.C. testified about Weston touching her vaginal area, under her clothes. N.C.'s mother also testified about N.C.'s disclosures of the incident, and N.C.'s videotaped forensic interview describing Weston's conduct was admitted at trial.

Any inconsistencies between the victims' statements creating possible credibility issues were left for the jury to resolve. At trial Weston thoroughly raised the inconsistencies of the victims' disclosures and discussed them at length in his closing argument. Further, Weston cross-examined Mother and Father about their custody arrangement for A.W. and told the jury this case arose from their "ongoing custody battle." The jury was well aware of all the inconsistencies and credibility issues Weston raises on appeal, and the jury was in the best position to resolve these issues. *See Porter*, 439 S.W.3d at 214. We will not second-guess the credibility determinations of the jury. *See Dodd*, 637 S.W.3d at 668. Therefore, we find there was sufficient evidence to support each count and thus, the trial court did not err in overruling Weston's motion for judgment of acquittal.

Point I is denied.

**Cross Examination**

**Standard of Review**

In Point II, Weston claims the trial court erred in overruling his motion for new trial because the State's cross examination of Weston was argumentative and highly prejudicial, violating Weston's right to due process. "To properly preserve a matter for appellate review, the trial objection must be specific, and the point raised on appeal must

11

be based upon the same theory presented at trial." *State v. Goins*, 306 S.W.3d 639, 646-47 (Mo. App. S.D. 2010) (internal quotation omitted). "The standard of review for preserved error in cross-examination is that of an abuse of discretion." *State v. Dewey*, 86 S.W.3d 434, 439 (Mo. App. W.D. 2002) (internal citation omitted). A trial court abuses its discretion "when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Peirano¸* 540 S.W.3d 523, 527 (Mo. App. S.D. 2018). In the absence of an objection to evidence at trial, this Court may exercise its discretion and review a matter for plain error. Rule 30.20; *State v. Minor*, 648 S.W.3d 721, 729 (Mo. banc 2022).

> Plain error review is a two-step process:
>
> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

*Minor*, 648 S.W.3d at 731.

## Analysis

Weston testified at trial and was subject to cross-examination. The relevant portions of the State's cross-examination of Weston was as follows:

> [State]: Okay. And you're on trial today for what you did to [N.C.] because you put your hand down her pants and touched her vagina.
>
> [Weston]: Absolutely not.
>
> [State]: *And I know that you're going to deny that because, quite frankly, that's the only thing you can do right now.*

12

[Weston's Counsel]: Your Honor, objection. Argumentative.

[State]: It's cross-exam.

[Trial Court] It's cross-examination. Overruled.

[State]: *That's the only thing that you can do right now; right, [Weston]?*

[Weston]: I mean, I'm up here testifying in my own defense. So yes, I'm denying it.

[State]: Yes. And what's really interesting -- what is really interesting is your defense attorney started their opening statement by talking about motive and opportunity; right? You remember your defense attorney talking about that?

[Weston] Yes.

[State]: About who has motive and opportunity in this case.

[Weston]: Correct.

[State]: *And you're a smart enough guy to realize that the number one person that has motive and opportunity to lie about this is you. You're smart enough to realize that; aren't you?*

[Weston]: Oh, sorry. You wanted me to answer?

[State]: Yeah.

[Weston]: I mean, I don't -- I don't think that that's the case here, you know. I definitely don't think I have the most motive and opportunity in this case.

[State]: You're the only person that has that motive and opportunity.

[Weston]: That's not correct, ma'am. (emphasis added.)

Later during cross-examination, the State questioned Weston about Boyfriend finding him under a blanket with N.C. The following conversation took place:

13

[State]: And [Boyfriend] decided to give you the benefit of the doubt and just say, "I don't think this happened;" right?

[Weston]: Right.

[State]: *And the reality is, maybe if things had been handled a little bit differently, maybe if he had confronted you back then, maybe you wouldn't have had access to [A.W.] like you did.*

[Weston's Counsel]: Is that a question, Your Honor?

[State]: I'll move on.

[State]: And the reality is, because [Boyfriend] didn't confront you about you being under a blanket with [N.C.], because he didn't confront you about what he knew had probably happened and he was concerned about, [A.W.] became a victim; didn't she?

[Weston]: No, ma'am.  (emphasis added.)

Finally, the State questioned Weston about where he lived during the time period the incident with A.W. took place.  The following conversation occurred:

[State]: You had a room right next to [Mother's] room, and that's where --

[Weston]: Correct.

[State]: -- your residence was; right?

[Weston] Not that entire timeframe, no, so.

[State]: And you went through that.

[Weston] Right.

[State] You joined the Air Force, and --

[Weston] Right.

[State]: -- *you must've gotten kicked out of the Air Force.*  You lived at your girlfriend's.  But the reality is, we can all agree on this.  You lived in that

14

residence for a period of time at the same time that little [A.W.] lived there; right?

[Weston]: Correct. (emphasis added.)

Only one portion of the State's cross-examination of Weston at issue herein was properly objected to and preserved for our review. Weston argues the State's comment, "And I know that you're going to deny that because, quite frankly, that's the only thing you can do right now [,]" was argumentative, opinion-oriented, and improperly prejudicial, all of which invades the jury's province as to the question of guilt before it. While we agree the State's comment is argumentative, "[t]rial courts retain broad discretion in deciding the permissible scope of cross-examination, and an appellate court will not reverse a conviction absent an abuse of that discretion." *State v. Taylor*, 134 S.W.3d 21, 25 (Mo. banc 2004). Thus, to be entitled to relief, Weston "must show he was prejudiced by the trial court's error to the extent that there is a reasonable probability that the outcome at trial would have been different had the error not been committed." *State v. Emerson*, 573 S.W.3d 93, 99 (Mo. App. E.D. 2019) (internal citation and quotation omitted).

Weston has failed to show he was prejudiced by the trial court's error. Weston merely asserts the State's questioning likely resulted in prejudicing the jury against Weston; however, at trial, there was substantial evidence against Weston. As discussed in Point I, A.W. and N.C. testified about how Weston sexually abused them, other witnesses testified about A.W.'s and N.C.'s disclosures of Weston's abuse, and video evidence of A.W.'s and N.C.'s forensic interviews was admitted at trial. Thus, Weston

15

has failed show there was a reasonable probability that the outcome at trial would have been different had the State's questioning not occurred.

We review the remaining challenged portions of the State's cross-examination for plain error, under Rule 30.20, because Weston failed to object to those questions at trial.[8] *See Minor*, 648 S.W.3d at 731. Again, Weston merely provides us with a conclusory statement that the State's cross-examination likely resulted in prejudicing the jury against him.[9] Because we have already determined there was no abuse of discretion creating prejudice, we decline to engage in plain error review. *See State v. Martin*, 661 S.W.3d 337, 341 n.4 (Mo. App. S.D. 2023) ("Abuse of discretion is a lower standard of prejudicial error than plain error and, therefore, a finding of no abuse of discretion will preclude a finding of plain error."). Therefore, we find the trial court did not plainly err in overruling his motion for new trial.

Point II is denied.

---

[8] Weston argues it would have been futile to continue to object to the State's questioning because "[i]t was clear from the trial court's decision in overruling the objection that the trial court was going to continue to allow the prosecutor to proceed . . . when the trial court replied to the objection with 'its cross-examination.'" Weston asserts any further attempts at objecting to the State's cross-examination was not required, citing to *Longshore v. City of St. Louis*, 699 S.W.2d 16, (Mo. App. E.D. 1985). Unlike in *Longshore*, where the plaintiff objected on relevancy grounds each time specific testimony was elicited at trial, Weston only made one objection on cross-examination. *Id.* at 18 (holding it was not necessary for plaintiff to continue to object when the trial court's position on the relevance of the evidence was evident). We cannot conclude the trial court's decision in overruling one objection made it evident the trial court would let all subsequent questions in if they were properly objected to.

[9] We are concerned about the State's statement during the cross-examination "*you must've gotten kicked out of the Air Force,*" which was completely unsupported by any evidence in the trial and has no relevance to any issue in the trial. However, the State did not further address this during the trial or mention it in its closing argument.

16

**Closing Argument**

**Standard of Review**

In Point III, Weston claims the trial court erred in overruling his motion for new trial because the State improperly argued past and future dangerousness in closing argument, thereby prejudicing defendant in violation of Weston's right to due process. Weston failed to object during either the State's closing argument or its rebuttal argument, so this issue is not preserved and we may only review for plain error under Rule 30.20. *See Minor*, 648 S.W.3d at 731.

**Analysis**

Weston argues part of the State's closing argument included an improper past and future dangerousness argument. During the State's closing argument, the State stated, "The defendant touched [N.C.]'s vagina under her pants when she was 4 years old. [Boyfriend], who took the stand, said when he caught them under the blankets, he was concerned. He was worried about it. *Had the defendant been stopped then, maybe we wouldn't be here*." The State also told the jury to "End his manipulation today." Weston argues he was improperly and unlawfully prejudiced by the State's direct and indirect references to Weston being a predator and inferentially urging the jury to find him guilty to prevent him from committing any similar conduct in the future. We disagree.

"Plain error relief as to closing argument should rarely be granted and is generally denied without explanation. This is because the absence of an objection during arguments means that any trial court intervention would be uninvited and may cause increased error." *State v. Barton*, 552 S.W.3d 583, 589 (Mo. App. W.D. 2018) (internal

17

citations and quotations omitted). "Plain error review also requires that the argument have a decisive effect on the jury's determination." *State v. Shurn*, 866 S.W.2d 447, 460 (Mo. banc 1993). The trial judge has no way of discerning if the defense has a strategic reason for failing to object to a particular comment by the State in closing argument and if the trial judge acts *sua sponte*, it may interfere with that defense strategy. *See State v. Clay*, 975 S.W.2d 121, 134 (Mo. banc 1998).

The State's call to the jury to "End his manipulation today," can be construed as a plea to uphold the law and protect other children, and thus, is not improper.[10] However, the State's argument that had Weston been stopped after the incident with N.C. occurred, "maybe we wouldn't be here", was improper because the argument sought to induce the jury to act on passion. *See State v. Dominguez-Rodriguez*, 471 S.W.3d 337, 350 (Mo. App. E.D. 2015) ("A prosecuting attorney should not inflame the passions or prejudices of the jury against a defendant."). While we find this comment to be improper, we must look at the entire record to determine if the State's comment amounts to plain error. *State v. Deck*, 303 S.W.3d 527, 543 (Mo. banc 2010).

---

[10] In a variety of cases, our Courts have concluded the State has not improperly argued future dangerousness in its closing. *See State v. Blue*, 655 S.W.3d 396, 401-02 (Mo. App. S.D. 2022) (holding State's argument to the jury that they were "the only people who can keep [her] safe and keep other children like her safe from a guy like [defendant]" was proper); *State v. Fisher*, 575 S.W.3d 508, 512-14 (Mo. App. S.D. 2019) (holding State's argument, "Is he held responsible or does he get up out of that chair, walk out that door to this community to do again what he's done?" did not merit relief under plain error review); *Jones v. State*, 389 S.W.3d 253, 257 (Mo. App. E.D. 2012) (holding State's closing argument referring to defendant as a "predator" and the victims as "perfect prey" was proper as the State was asking the jury to send a message that the community will not tolerate such conduct).

18

Weston has failed to show these statements during closing argument prejudiced him because there is no basis to conclude the statements had a decisive effect. *See State v. Fisher*, 575 S.W.3d 508, 513 (Mo. App. S.D. 2019) ("[T]here must exist a reasonable probability that in the absence of the statement at issue, the verdict would have been different."). As discussed in Point I and Point II, there was overwhelming evidence against Weston. Therefore, no manifest injustice resulted, and the trial court did not plainly err in overruling Weston's motion for new trial on this basis. Point III is denied.

**Cumulative Error**

**Standard of Review**

Weston's fourth and final point on appeal is that the trial court erred in overruling his motion for new trial because the State's errors were cumulatively sufficient to violate Weston's rights to due process and a fair trial. "An appellate court may grant a new trial based on the cumulative effects of errors, even without a specific finding that any single error would constitute grounds for a new trial." *Hurley v. Burton*, 626 S.W.3d 810, 827-28 (Mo. App. E.D. 2021) (internal citation omitted). We will not grant relief, however, "when there is no showing that prejudice resulted from any rulings of the trial court." *Id.* at 828.

**Analysis**

As previously discussed, Weston has failed to persuasively identify any prejudicial error during the trial, and therefore the point must fail. *See id.* Point IV is denied.

19

## Conclusion

For the above stated reasons, we affirm the judgment and sentence of the trial court.

_____
Gary D. Witt, Chief Judge, Presiding

All concur