

# Missouri Court of Appeals
## Southern District

In Division

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | No. SD37815 |
| | ) | |
| v. | ) | **Filed:  August 27, 2024** |
| | ) | |
| CHAZ D. LEWIS, | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

Honorable John D. Beger, Judge

**<u>REVERSED</u>**

### <u>Introduction</u>

Chaz D. Lewis was charged with the class E felony of unlawful transfer or surrender of custody of his minor daughter ("Child") after defying an order in a separate circuit court ("family court") case to bring Child to court and instructing his parents, Child's grandparents ("Grandparents"), to "keep [his] daughter safe" while he served a 60-day jail sentence for being in contempt.  The statute under which he was charged, section 453.110, prohibits the surrender or transfer of custody of a minor child without first obtaining approval from a juvenile court.[1]

---

[1] All statutory citations are to RSMo (2016).

A jury found Lewis guilty of the unlawful transfer or surrender of custody of Child under section 453.110 and he was sentenced to four years' imprisonment. Lewis appeals from that judgment in three points. In point 1, Lewis argues the trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence that Lewis transferred or surrendered custody of Child by leaving Child with Grandparents while he served a 60-day jail sentence for contempt in the family court case. We agree. Lewis's first point has merit and is dispositive of his remaining two points.[2] The judgment is reversed.

## Background

Lewis and his ex-wife are the parents of Child. In August 2018, the couple separated and, in May 2019, the family court entered a temporary joint legal and joint physical custody order. The order directed Lewis and ex-wife to alternate weeks of Child's custody and to exchange custody of Child at the Springfield Police Department.

Both parties complied with the custody order until November 2019, when Lewis stopped exchanging Child with ex-wife. From November 2019 to April 2020, Child resided with Lewis and Lewis did not let ex-wife see Child.

In April 2020, Lewis was ordered to bring Child to court and to comply with the custody order. Lewis refused and was held in contempt by the family court judge. Lewis was given an opportunity by the family court judge to arrange for Child to appear in court, but when Lewis called Grandparents, he instructed them to "keep [his] daughter safe." Lewis admitted to the family court judge he was violating the order by not exchanging Child with ex-wife. The family court found Lewis in contempt of its order

---

[2] In point 2, Lewis argues there was insufficient evidence he failed to retain his right to supervise the care of Child and to resume custody of her when he left her at home with Grandparents while he served a sixty-day jail sentence. In point 3, he argues the trial court plainly erred in submitting a jury instruction on the unlawful transfer of custody because that instruction failed to advise the jury of an exception for when a defendant retains the right to supervise a child and resume custody of a child.

2

and Lewis was taken to jail where he remained until June.  While Lewis was in jail, Child remained at Lewis's home with Grandparents.  Ex-wife never consented to Grandparents' care of Child while Lewis was incarcerated.

In October 2020, ex-wife was granted full custody of Child.  However, Child remained with Lewis and Grandparents at Lewis's home until December 2, 2020, when law enforcement intervened.

Lewis was charged with child abduction (Count 1) and the unlawful transfer or surrender of custody of a child (Count 2).  The unlawful-surrender charge specified the time period only applied to those 60 days during which Lewis was incarcerated for contempt.  The jury convicted Lewis of the unlawful-surrender of a child (Count 2) but could not reach a unanimous decision on the child-abduction count.[3]

## Sufficiency-of-the-Evidence Claim

### *Standard of Review*

Lewis's first point challenges the sufficiency of the evidence to convict him of the unlawful surrender of a child under section 453.110 because the State failed to prove beyond a reasonable doubt that Lewis permanently transferred or surrendered custody of Child while he served a 60-day contempt jail sentence.  In reviewing the sufficiency of the evidence to support a conviction, we do not weigh the evidence but accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences.  ***State v. Collins***, 648 S.W.3d 711, 718 (Mo. banc 2022).  Our review of a sufficiency-of-the-evidence challenge "is limited to determining whether there is sufficient evidence from which . . . any rational fact-finder could have found the essential elements of the crime beyond a reasonable

---

[3] The State dismissed the child-abduction count after the jury could not reach a unanimous decision.

doubt." ***State v. Phillips***, 687 S.W.3d 642, 650 (Mo. banc 2024) (quoting ***State v. Porter***, 439 S.W.3d 208, 211 (Mo. banc 2014)).

According to Lewis, the "transfer" or "surrender" of Child requires the State to prove Lewis intended to fully and permanently give up his custodial rights to Child to a third party, like an adoption, and the statute does not apply to situations in which a parent retains the right to custody. This argument raises an issue of statutory interpretation. "When a challenge to the sufficiency of the evidence raises an issue of statutory interpretation, we conduct *de novo* review." ***State v. Yocco***, No. ED111409, 2024 WL 3573083, at *6 (Mo. App. E.D. July 30, 2024).

### Analysis

The primary rule of statutory interpretation is to give effect to the legislature's intent as reflected in the plain language of the statute. ***State v. McDonald***, 626 S.W.3d 708, 713 (Mo. App. W.D. 2021). In construing statutes, "[w]ords and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import." § 1.090. We do not read the words in the statute in isolation but, rather, read them in the context of the statute as a whole to determine their plain and ordinary meaning. ***McDonald***, 626 S.W.3d at 713. "We resort to statutory construction only when statutory language is ambiguous[.]" ***State v. Haynes***, 564 S.W.3d 780, 784 (Mo. App. E.D. 2018). A statute is not ambiguous if its meaning is plain and clear to one of ordinary intelligence. ***Doe v. St. Louis Cmty. Coll.***, 526 S.W.3d 329, 336 (Mo. App. E.D. 2017). In contrast, "[a] statute is ambiguous when its plain language does not answer the current dispute as to its meaning." ***J.B. v. Vescovo***, 632 S.W.3d 861, 865 (Mo. App. W.D. 2021) (quoting ***Kersting v. Replogle***, 492 S.W.3d 600, 602 (Mo. App. W.D. 2016)).

The State and Lewis disagree over whether section 453.110.1 requires the State to prove Lewis permanently transferred custody of Child to Grandparents, like in an adoption.[4]  Neither party directs us to any criminal case construing the provisions of section 453.110.  Our research also yields no discussion of the statute in the criminal context.  In fact, our research shows section 453.110 has, so far, only been analyzed in civil cases involving unauthorized adoptions.[5]  This is a case of first impression.

Section 453.110 provides:

1. No person, agency, organization or institution shall surrender custody of a minor child, or transfer the custody of such a child to another, and no person, agency, organization or institution shall take possession or charge of a minor child so transferred, without first having filed a petition before the circuit court sitting as a juvenile court of the county where the child may be, praying that such surrender or transfer may be made, and having obtained such an order from such court approving or ordering transfer of custody.

2. If any such surrender or transfer is made without first obtaining such an order, such court shall, on petition of any public official or interested person, agency, organization or institution, order an investigation and report as described in section 453.070 to be completed by the children's division and shall make such order as to the custody of such child in the best interest of such child.

3. Any person who violates the terms of this section is guilty of a class E felony.

4. The investigation required by subsection 2 of this section shall be initiated by the children's division within forty-eight hours of the filing of the court order requesting the investigation and report and shall be completed within thirty days.  The court shall order the person having custody in violation of the provisions of this section to pay the costs of the investigation and report.

5. *This section shall not be construed to prohibit any parent, agency, organization or institution from placing a child with another individual for care if the right to supervise the care of the child and to resume custody thereof is retained*, or from placing a child with a licensed foster home within the state through a child-placing agency licensed by this state as part of a preadoption placement.

---

[4] Chapter 453 is entitled "Adoption and Foster Care[.]"

[5] As there was no MAI instruction for this charge, the State prepared the verdict director based on the language of section 453.110.1.

§ 453.110 (emphasis added).[6]

The statute does not define "transfer", "surrender," or "custody."  "In the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary."  ***State v. Oliver***, 293 S.W.3d 437, 446 (Mo. banc 2009).  Webster's dictionary defines "transfer" as "to convey from one person, place, or situation to another."  *Transfer Definition*, *Merriam-Webster.Com*, https://www.merriam-webster.com/dictionary/transfer (last visited Jun. 24, 2024).  "Surrender" is defined as "to yield to the power, control, or possession of another upon compulsion or demand."

---

[6] The remainder of section 453.110 reads:

> 6. After the filing of a petition for the transfer of custody for the purpose of adoption, the court may enter an order of transfer of custody if the court finds all of the following:
>
> (1) A family assessment has been made as required in section 453.070 and has been reviewed by the court;
>
> (2) A recommendation has been made by the guardian ad litem;
>
> (3) A petition for transfer of custody for adoption has been properly filed or an order terminating parental rights has been properly filed;
>
> (4) The financial affidavit has been filed as required under section 453.075;
>
> (5) The written report regarding the child who is the subject of the petition containing the information has been submitted as required by section 453.026;
>
> (6) Compliance with the Indian Child Welfare Act, if applicable; and
>
> (7) Compliance with the Interstate Compact on the Placement of Children pursuant to section 210.620.
>
> 7. A hearing on the transfer of custody for the purpose of adoption is not required if:
>
> (1) The conditions set forth in subsection 6 of this section are met;
>
> (2) The parties agree and the court grants leave; and
>
> (3) Parental rights have been terminated pursuant to section 211.444 or 211.447.

(Internal footnote omitted).

6

*Surrender Definition*, *Merriam-Webster.Com*, https://www.merriam-webster.com/dictionary/surrender (last visited Jun. 24, 2024). Unlike "transfer" and "surrender," "custody" is a technical term having a particular meaning in law. In the family law context, "custody" is defined as "[t]he care, control, and maintenance of a child awarded by a court to a responsible adult," and "involves legal custody (decision-making authority) and physical custody (caregiving authority)[.]" Black's Law Dictionary (12th ed. 2024). Thus, the plain language of section 453.110.1 demonstrates an intent by our General Assembly to prohibit a party from conveying or relinquishing the full panoply of parental rights (legal custody and physical custody) to another without first obtaining approval by a juvenile court. *See **In re Baby Girl** ---*, 850 S.W.2d 64, 68 (Mo. banc 1993) ("The obvious purpose of the legislature in enacting § 453.110.1 was to prohibit the indiscriminate transfer of children, the concept that a parent could pass them on like chattel to a new owner.").

> While the state has a profound interest in providing a mechanism for the adoption of children whose parents are unable or unwilling to care for them by persons who desire that responsibility, it has an equally significant interest in regulating adoptions in order to protect the interests of the child and to prevent the black market trade of children.

*Baby Girl*, 850 S.W.2d at 71.

Section 453.110 therefore does not apply when a party merely leaves a child in the temporary care of another. It only applies when that party knowingly conveys or relinquishes his or her full custodial rights (i.e., legal custody and physical custody) over the child to another without court approval. Our General Assembly clarified this intent by expressly commanding that the statute "shall not be construed to prohibit any parent, agency, organization or institution from placing a child with another individual for care if the right to supervise the care of the child and to resume custody thereof is retained[.]" § 453.110.5.

7

The State bore the burden of proving every element of the crime beyond a reasonable doubt. *See* **State v. Stevenson**, 658 S.W.3d 115, 120 (Mo. App. S.D. 2022). The State's evidence was insufficient to meet this burden. The State did not prove beyond a reasonable doubt that Lewis knowingly conveyed or relinquished his custodial rights to Child by leaving Child with Grandparents. To the contrary, the evidence showed Lewis *refused* to cede any right to Child, by defying the family court's order to bring Child to court. Nor is it reasonable to infer Lewis intended to "transfer" or "surrender" his custodial rights to Child by instructing Grandparents to "keep [his] daughter safe." Child lived with Lewis and Grandparents in Lewis's home. And it is not uncommon for parents to leave children with grandparents or caretakers while they are away. A statement to a child's grandparents to keep the child safe while a parent is about to be incarcerated, without more, is insufficient to prove the parent intended to "transfer" or "surrender" custodial rights to the grandparents. While Lewis may have intended to deprive ex-wife from exercising her custodial rights to Child by detaining Child and instructing Grandparents to do the same, and while such conduct may be a crime under a different statute, evidence of such conduct, without more, is insufficient to show a violation of section 453.110.1.[7] Point 1 is granted.

---

[7] Our General Assembly has made it a crime for a person to intentionally detain a child with the intent to deprive the custody or visitation rights of another person, without obtaining written consent, even if the person has legal custody of the child pursuant to a valid court order. *See* § 565.156.1(5). We do not decide whether the evidence in this case was sufficient to convict Lewis under section 565.156.1(5), but merely point out our legislature has addressed situations where one parent intentionally detained a child with the intent to deprive the other parent of visitation rights.

**Conclusion**

Lewis's judgment of conviction is reversed, and this Court enters a judgment of acquittal.[8]

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, C.J. – CONCURS

JEFFREY W. BATES, J. – CONCURS

---

[8] "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *State v. Lehman*, 617 S.W.3d 843, 850(Mo. banc 2021) (quoting *Burks v. United States*, 437 U.S. 1, 11 (1978)).